EXHIBIT 2

```
1            IN THE UNITED STATES DISTRICT COURT

2            IN AND FOR THE DISTRICT OF DELAWARE

3
      ROBOCAST,                    )
4                                  )
      -------------------Plaintiff, )
5                                  ) Case No.
            vs.                    ) 22-CV-305-RGA-
6                                  ) JLH
                                   )
7     NETFLIX,                     )
                                   )
8     -------------------Defendant. )
      _____
9
      ROBOCAST,                    )
10                                 )
      -------------------Plaintiff, )
11                                 ) Case No.
            vs.                    ) 22-CV-354-RGA-
12                                 ) JLH
                                   )
13    GOOGLE,                      )
                                   )
14    -------------------Defendant. )

15

16         TRANSCRIPT OF DISCOVERY CONFERENCE

17

18         DISCOVERY CONFERENCE had before the

19    Honorable Jennifer L. Hall, U.S.M.J., via

20    teleconference on the 29th of August, 2023.

21

22

23

24

25
```

```
1                     APPEARANCES

2          BAYARD P.A.
               BY:  RONALD GOLDEN, ESQ.
3
                     -and-
4
           MCKOOL SMITH
5              BY:  CASEY SHOMAKER, ESQ.
                    WILLIAM ELLERMAN, ESQ.
6                   SAMUEL MOORE, ESQ.

7                         Counsel for Plaintiff

8
           RICHARDS, LAYTON & FINGER, P.A.
9              BY:  KELLY E. FARNAN, ESQ.
                    TYLER CRAGG, ESQ.
10
                     -and-
11
           LATHAM & WATKINS LLP
12             BY:  TARA ELLIOTT, ESQ.
                    RACHEL COHEN, ESQ.
13                  KIMBERLY LI, ESQ.

14                        Counsel for Netflix

15

16         RICHARDS, LAYTON & FINGER P.A.
               BY:  FRED COTTRELL, ESQ.
17                  GRIFFING SCHOENBAUM, ESQ.

18                   -and-

19         WILSON SONSINI GOODRICH & ROSATI
               BY:  JORDAN JAFFE, ESQ.
20
                          Counsel for Google
21

22

23

24

25
```

```
1              THE COURT:  Good afternoon, everyone.
2    This is Jen Hall.  We're on the line today to
3    hear a number of discovery disputes.  We have
4    Robocast versus Netflix.  It's 22-305.  We also
5    have Robocast versus Google.  It's 22-354.
6    Let's put appearances on the record starting
7    with Robocast
8              MR. GOLDEN:  Thank you, Your Honor.
9    Good afternoon.  This is Ronald Golden from
10   Bayard PA on behalf of Robocast.  I have with
11   me on the line from McKool Smith Casey
12   Shomaker, William Ellerman, and Samuel Moore.
13             THE COURT:  Great.  Good afternoon to
14   all of you.
15        And how about Netflix?
16             MS. FARNAN:  Yes, good afternoon,
17   Your Honor.  This is Kelly Farnan from
18   Richards, Layton, and Finger on behalf of
19   Netflix.  Tyler Cragg from my office is also on
20   the line.  I'm joined by my co-counsel at
21   Latham and Watkins Tara Elliott, Rachel Cohen,
22   and Kimberly Li.  We also have Laura Carrington
23   from Netflix on the line, and Ms. Cohen will
24   address the disputes before the Court today.
25             THE COURT:  All right.  Very good.
```

1          And how about in 22-304, Google?

2              DFT TWO:  Good afternoon, Your Honor.

3    Fred Cottrell from Richards Layton for YouTube

4    and Google in 22-304.  Also from my office,

5    Griffin Schoenbaum.  And my co-counsel from

6    Wilson Sonsini, Jordan Jaffe, and Mr. Jaffe

7    will be speaking on behalf of the defendants.

8              THE COURT:  Great.  That's fine.  We

9    have a court reporter on the line today.

10         I can tell you we've taken a look at the

11   letters, and as we did so, we were reminded

12   that we've already talked about some of these

13   issues once this summer.  Doesn't seem like

14   we've made much progress since then, so let's

15   see what we can get done today.

16         Let's start with the defendants'

17   disputes.  I've read the letters.  Anything

18   that Netflix wants to add to its argument about

19   the interrogatories?

20             MS. COHEN:  Hi, Your Honor.  This is

21   Rachel Cohen on behalf of Latham and Watkins

22   for the defendant Netflix.

23         Just in terms of the first issue in

24   dispute for Defendant Netflix and Google, it

25   applies to them as well, in terms of the

1    numerosity dispute, Defendants -- Robocast, the
2    plaintiff in this case, doesn't actually defend
3    its counting at all in its responsive letter.
4    The interrogatories at issue here were served
5    on March 1st of this year.  It's been six
6    months, and they have not responded to a single
7    substantive -- a single substantive response to
8    any of the served interrogatories.  They do not
9    defend the numerosity issue.
10        And the served interrogatories are
11   consistent with the interrogatories that are
12   served in this court that are commonly before
13   the court, and to the extent -- I'm happy to
14   engage into why each one goes to the topical
15   issue and seeks the facts and circumstances
16   that go to the call of the question, if the
17   Court would like, but it is consistent with
18   practice that is consistent in this court, and
19   I think Robocast unfortunately invites the
20   court to start deviating from the practice, and
21   doing so would certainly increase the number of
22   discovery disputes in this jurisdiction.
23             THE COURT:  Okay.  And anything that
24   YouTube and Google want to add just about the
25   interrogatory number issue?

```
 1                MR. JAFFE:  Thank you, Your Honor.
 2      This is Jordan Jaffe on behalf of Google and
 3      YouTube.  I won't repeat what Ms. Cohen
 4      mentioned, so I'll be brief.
 5                We agree, as to Google and YouTube, that
 6      Robocast did not defend its counting in its
 7      responsive brief, so in our view the easiest
 8      way to resolve this dispute would be simply to
 9      overrule the numerosity objections because none
10      of them have the discrete subparts, so we're
11      substantially under the limit.
12                We think if you look at the Megatives
13      case -- hopefully I'm pronouncing that
14      correctly -- Judge Burke lays out an example
15      where Defendants in Interrogatory 2 describe
16      "the development efforts that relate to the
17      alleged technologies" and goes through and has
18      them talking about the first described in
19      writing, first manufactured.  And as Judge
20      Burke explained in that case, those were each
21      subsumed within the larger interrogatory and
22      are not discrete subparts.
23                For all those reasons, we believe the
24      subpart issue for Google and YouTube that they
25      all are -- do not comprise discrete and
```

1    separate subparts that are then subsumed within

2    the single one.  That's part one.

3          And then part two, the numerosity

4    objection, I think that Ms. Cohen mentioned

5    we -- the better course for them would be to

6    answer at least the 25 interrogatories rather

7    than refuse to answer them all, and we've got

8    the caselaw in our brief, and I'm happy to

9    address it if the Court would like.

10          THE COURT:  All right.  Let's hear

11   from Robocast on this.

12          MS. SHOMAKER:  Yes, Your Honor.

13   Casey Shomaker for Plaintiff Robocast.

14          Robocast believes in the letters that we

15   exchanged with Netflix over the past couple

16   months and in addition our briefing submitted

17   in front of this Court that we've cited the

18   caselaw that supports our position that these

19   'rogs comprise multiple subparts.

20          As noted in our briefing, we offered

21   compromise positions to both Google and Netflix

22   wherein Google and Netflix could withdraw the

23   objectionable interrogatories and thereby

24   Robocast would comply with the law back on

25   point in response to those interrogatories

1    without waiving numerosity objections.  This

2    was reiterated multiple times, and neither

3    party took us up on it, and so we were forced

4    to comply with the law and not waive our

5    objections, so that's truly why we haven't

6    responded to any of the interrogatories.

7            THE COURT:  Are you wanting me to

8    find that these are more than 25 that you were

9    served?  Because you didn't even argue how

10   that's the case.

11           MS. SHOMAKER:  Yes, Your Honor.  So

12   these are multiple -- both Google and Netflix

13   served multiple interrogatories, more than 25

14   interrogatories.  With respect to Google,

15   Google served -- exceeded the 25-interrogatory

16   limit when they served Interrogatory Number 12,

17   and so the -- our responses to interrogatories

18   1 through 11 were pending when they served

19   their final interrogatory; therefore, there

20   were more than 25 pending interrogatories at

21   the time.  And Netflix only served one set of

22   interrogatories, and each one in that entire

23   set included more than 25 interrogatories and,

24   in fact, 45 discrete subparts.

25           THE COURT:  Okay.  We've got a lot to

1    get through today, so I'll keep my ruling

2    brief.

3         I disagree with how Robocast has handled

4    this, both in terms of how it responded to the

5    parties and particularly with respect to its

6    position against Google, who even Robocast

7    agrees did not serve more than 25

8    interrogatories.

9         How long have these interrogatories been

10   pending?

11             MS. SHOMAKER:  Six months for

12   Netflix.  Nearly six months.  September 1st

13   will be six months, Your Honor.

14             THE COURT:  Okay.  And then just,

15   again, a third thing of the reasons I disagree

16   with how Robocast handled this was in its

17   briefing to this Court, there's no attempt made

18   to even provide the Court with how it counted

19   or why it's appropriate, basically putting the

20   burden on the Court to expend time and

21   resources.

22        So Robocast needs to respond to all of

23   the interrogatories within one week to both

24   parties.  These have been pending a long time.

25   You should know what the answers are.  I don't

1    think I have anything more to say on that.

2    Netflix has a couple other issues.

3    　　　MS. COHEN:  This is Rachel Cohen

4    again for Netflix.  The second issue is

5    Robocast's deficient Rule 26(a) disclosures as

6    it relates to damages.

7    　　　So as the plaintiff in this case,

8    Robocast has an obligation under Rule 26,

9    consistent with Judge Andrews' decisions in the

10   *NexStep* case as well as the *Conflow* case, to

11   identify -- it respectfully requires initial

12   computation and disclosure of the evidence that

13   Robocast will rely upon, to the full extent

14   that it can or should know of it.

15   　　　We were happy to see that for the first

16   time after months of going round and round on

17   their good-faith basis for asserting lost

18   profits that they finally acknowledged to the

19   Court that it can't or won't pursue lost

20   profits in this case, and that's a start, but

21   it really doesn't solve the disclosure of what

22   they actually do intend to seek in terms of a

23   reasonable royalty.

24   　　　The -- under the Court's the prior law

25   that I just cited to, they do have an

1      obligation to explain what they can and do

2      know, and those include, Your Honor, among

3      other things, an explanation of how the

4      licenses directed to the patents-in-suit -- at

5      least one has been previously licensed -- how

6      do those three licenses play into their damages

7      theories in this case, their terms of the

8      license, the duration, the licensing package of

9      the patentee.  That's *Georgia Pacific* factor

10     number four.

11         *Georgia Pacific* factor number five talks

12     about the relationship between the patentee and

13     accused infringer.  Notwithstanding our efforts

14     for the last six months to get discovery from

15     Robocast, they refused to identify any of that

16     information, which was squarely in their

17     possession.  They know if they have a competing

18     product or patent infringing product.  They

19     know if the parties are competitors.  That's

20     information that they possess and that, under

21     Rule 26, they have an obligation to disclose

22     and they've been withholding.

23         They also have attempted to shift the

24     burden to seek discovery from Netflix before it

25     can disclose information that's solely in its

1     possession, and that's wrong based on the law

2     we obviously cite to in our papers.

3            THE COURT:  All right.  Let me hear

4     from Robocast.

5        So you agree, don't you, that you need to

6     update your Rule 26 disclosures immediately,

7     given the fact that you have now said that you

8     are not seeking lost profits, do you not?

9            MR. ELLERMAN:  Your Honor, this is

10    Will Ellerman for Robocast.  We have already

11    done that.  We have already updated our Rule 26

12    disclosures to clarify we are not seeking lost

13    profits.

14           THE COURT:  I don't have the current

15    version of the disclosures in front of me?

16           MR. ELLERMAN:  No, Your Honor.

17           THE COURT:  When were those updated?

18           MR. ELLERMAN:  Sometime last week

19    before the briefing on this.

20           THE COURT:  So how am I supposed to

21    determine whether or not your current

22    disclosures are good enough if I don't have

23    them?

24           MR. ELLERMAN:  Well, Your Honor, I

25    believe Netflix included the -- at least one

1   version of the disclosures in their letter

2   since this was their issue, and what we did was

3   delete the reference to lost profits.  And so

4   our disclosures, as they stand today, seek

5   reasonable royalty damages.  We have complied

6   with Rule 26 to the best of our ability in that

7   regard.

8        The *NexStep* case that Netflix cites, you

9   know, that case is, number one, distinguishable

10  because that struck a new damages theory that

11  was disclosed for the first time on the eve of

12  trial, and the case says that all a claimant

13  has to do, its only obligation, is to disclose

14  information about its damages to the best of

15  its ability.  And Netflix has not given any

16  reason or any authority that would require

17  Robocast to give a damages calculation at a

18  time when Netflix has given us virtually no

19  financial discovery whatsoever.

20       And as we cited in our papers, Your

21  Honor, the advisory committee notes to this

22  rule cite a patent case as the example of when

23  a plaintiff is simply not able to provide a

24  complete damages disclosure at the outset of a

25  case because all relevant information is in the

14

1    defendant's possession.  And we may be getting

2    a little bit ahead of ourselves into some of

3    the other issues here, but Netflix's production

4    to date is woefully inadequate.

5            THE COURT:  I'm going to stop you

6    right there.  I'm looking right now at Exhibit

7    G to Netflix's letter.  And so what you're

8    saying is you deleted out the paragraph on page

9    six that talks about lost profits, but you

10   still have in there the reasonable royalty

11   paragraph that says that the analysis you're

12   going to use is the hypothetical negotiation

13   and that you've got licenses with Microsoft and

14   Apple and that you're also going to look at

15   licenses produced by Netflix, and you're going

16   to come up with a royalty rate.  Is that

17   essentially what it says?

18           MR. ELLERMAN:  That's correct, Your

19   Honor, and we've --

20           THE COURT:  Okay.  So under the

21   circumstances here, I'm going to hold that

22   that's good enough for now, given that you

23   dropped your lost profits.  But again, the

24   issue as it was presented to me was that you

25   were seeking lost profits.  You didn't drop

1   that until after they raised it, and I would

2   have agreed with them that this wasn't enough,

3   that you were seeking it to sue lost profits,

4   and it shouldn't have taken a discovery motion

5   to get this resolved.

6           Let's move on to the next issue that

7   Netflix has.

8                 MS. COHEN:  Thank you, Your Honor.

9           The third issue that we raised is

10  Robocast's limitations on its document

11  production.  Throughout its submissions, and it

12  sounds like this is where it's going again in

13  this hearing, Robocast has represented it

14  produced more than a million documents in this

15  litigation.  But it also acknowledges that

16  those documents were merely a reproduction

17  reproducing and reusing all of its submissions

18  and exchanges from the Microsoft and Apple

19  litigation, which both resolved in 2014.  It

20  admitted that it does not intend to produce any

21  documents after 2014, and, obviously, the

22  relevant damages window that it has alleged in

23  this case is 2016 to 2020, and it has indicated

24  to us that it has no intention of producing any

25  documents in that window.

1     Although it argues that the materials are

2 not relevant or somehow they believe there's no

3 relevance to those documents, we pointed out

4 repeatedly setting aside the lost profits,

5 which we just discussed they dropped, those

6 documents are also relevant to the hypothetical

7 negotiation and the *Georgia Pacific* factors.

8 Of course, the Federal Circuit has explained

9 that the *Book of Wisdom* allows the parties in

10 the hypothetical negotiation to take a look

11 beyond the date of the hypothetical negotiation

12 itself to inform those discussions.

13     And whether they have a practicing

14 product, which they refuse to tell us, whether

15 they have a product that is within the scope of

16 the claims, whether the parties competed, all

17 of that information is highly relevant, both at

18 the time of the hypothetical negotiation and in

19 the window of the alleged damages of 2016 to

20 2020.  And those are highly relevant both in

21 terms of damages as well as claim scope,

22 liability, and infringement, as well as

23 invalidity in this case.  We do believe we have

24 shown they're relevant.

25     In terms of the burden, they said they're

1    standing on the fact they say it's unduly

2    burdensome to even look for those documents

3    because they might be privileged.  We take

4    issue with that as well, Your Honor, and that

5    gets into the second issue or second part of

6    the dispute, which is documents relating to

7    funding and financing, which is a component but

8    not the sole dispute that relates to the

9    untenable position they've taken in this case.

10        As it relates to the funding and

11   financing issue, it's Robocast that took the

12   position before this Court just last year that

13   litigation is a big piece of Robocast's

14   business and raising capital to finance its

15   litigation efforts is part of its business

16   strategy.  That is consistent, Your Honor, not

17   only with it opposition to its motion to

18   transfer in the Google case, but it's also

19   consistent with their production to date.  If

20   they look back at their pre-2014 production,

21   those do show that they produced documents in

22   the prior litigation relating to their

23   licensing and enforcement efforts, and that

24   undermines their assertion here that those

25   documents are somehow privileged and unduly

1    burdensome to so log.

2         Of course, if they want to assert

3    privilege, they have the burden as the

4    plaintiff and the holder of the alleged

5    privilege to prove that those documents are

6    privileged by, at a minimum, logging those

7    documents, which we believe are highly relevant

8    to the case, and shouldn't bar them doing a

9    reasonable search for materials that are highly

10   relevant to this case, and they are on the

11   damages issues as well as liability.

12            THE COURT:  All right.  Thanks very

13   much.  Let's turn it over to Robocast.

14        Let's focus right now, if we could, on

15   your production to them.  You can make your

16   argument about why their production is

17   deficient in a second.  Let's just focus on

18   what they want from you.  What is your position

19   on documents post-dating 2014?  That you don't

20   have any?  That you don't have any that aren't

21   privileged?  Or they're not relevant?  What's

22   the exact position?

23            MR. ELLERMAN:  Sure, Your Honor.

24   Will Ellerman again.

25        First of all, Robocast has produced over

1    a million documents.  That's over 4 million

2    pages.  155,000-some-odd of those documents are

3    e-mails.  The only justification that Netflix

4    has given for documents post-dating 2014 is

5    that it's somehow relevant to a hypothetical

6    negotiation.  They have not explained how it

7    could possibly be relevant to a hypothetical

8    negotiation that would have occurred years

9    before 2014.

10        The hypothetical negotiation date in this

11   case predates the damages period, which is 2016

12   to 2020.  It would have occurred way more than

13   six years ago.  We don't know exactly when the

14   hypothetical negotiation occurred because

15   Netflix has not given us sufficient

16   documentation to pin that down.  But my point

17   is to the extent they say it's relevant to the

18   hypothetical negotiation, we need to dig

19   further back in time than 2014 because it

20   appears, in all likelihood, that the playlist

21   feature that's accused was probably introduced

22   sometime in 2012 or earlier.

23        But, Your Honor, as far as what Robocast

24   has, there's nothing -- we -- first of all,

25   we -- Robocast has never taken the position

1    that it's not going to turn over a relevant

2    document that may have been created after 2014

3    that's somehow relevant to the time period in

4    this case.  But the fact of the matter is

5    Robocast is not a big company --

6         THE COURT:  That's exactly the

7    opposite of what they say.  You have not taken

8    the position that you won't turn over documents

9    after 2014?

10         MR. ELLERMAN:  We have taken the

11    position that it's unduly burdensome for us to

12    sort through all of the privileged documents

13    that exist during this time period in order to

14    try to find anything that might be marginally

15    relevant.

16         Robocast is basically a two-man operation

17    that's largely a holding company today.  It's

18    had no commercial activity since 2014 aside

19    from the patent licenses that have been

20    produced.  It's had no other litigations since

21    the Microsoft and the Apple cases concluded.

22    So if it has anything at all, it's either going

23    to be a massive volume of privileged

24    information, and there may be documents related

25    to potential litigation funding.

1          Our point is even if there was some

2     minuscule bit of relevant information during

3     this time period, it would be outweighed by the

4     burden of having to log virtually every

5     communication as privileged.

6          THE COURT:  Okay.  I've heard enough

7     on this dispute.  I take your point.  I don't

8     know if "ironic" is the right word, but I can't

9     find on this record that it would be burdensome

10    for Robocast, as the party who's bringing this

11    suit, to produce documents.  So here's what you

12    need to do.  You need to -- if the parties can

13    agree on how a privilege log should be

14    exchanged and they don't require

15    document-by-document logging, that's fine.  I

16    don't know what you all have agreed on.

17         But Robocast needs to search for

18    documents that post-date 2014 that are

19    responsive to the request for production made

20    by the defendant, and if those documents are

21    responsive, they need to be produced.  If

22    they're responsive but they're privileged, they

23    need to be logged.

24         Are there any such documents -- this

25    question is for counsel for Plaintiff -- that

1       are -- here's what I'm trying to get at:  Do I

2       need to discuss this litigation funding issue,

3       or are you going to claim that those are all

4       privileged so we really don't need to talk

5       about whether litigation funding documents are

6       relevant?

7                MR. ELLERMAN:  Our primary objection,

8       Your Honor, on the litigation funding documents

9       is that they are not relevant under the

10      authority of this Court.  We've cited the Court

11      to a couple of cases from Judge Andrews where

12      he says funding-related documents are not

13      relevant.  Producing them gives the defendant

14      an unfair advantage.

15          Netflix has cited to cases that don't

16      apply here.  One case sought production of an

17      IP insurance policy.  That's not a funding

18      document.  And other Courts in the district

19      have said that the one case that Netflix relies

20      on, *Acceleration Bay*, does not stand for the

21      proposition that funding documents are

22      relevant, are always relevant.  What it stands

23      for is that, really, any document might be

24      relevant as long as the party seeking it can

25      establish its relevance.

1          And here, in none of the briefing that

2     Netflix has submitted to this Court has it even

3     tried to explain how potential funding

4     documents might be relevant to any particular

5     fact in this case at all.  It just says, well,

6     some Courts in the district require disclosure

7     of funding information; therefore, Robocast

8     must do that as well.  And that's not the law

9     in the district.  That's not what the cases

10     they cited to say, and we don't believe that

11     there's been any showing here whatsoever of

12     relevance for any funding documents.

13          So we would ask -- we understand the

14     Court's ruling about post-2014 documents, but

15     we would ask that the Court carve out any

16     funding documents from that order.

17          THE COURT:  Here's what my ruling is

18     on this:  I wouldn't say that I'm carving out

19     anything.  If there's a document that is

20     responsive to one of Defendants' other requests

21     but it also talks about litigation funding,

22     that document is not going to be carved out.

23     That document needs to be logged.  I'm not

24     going to order that litigation funding

25     documents need to be produced at this point,

1   but I'm also not carving them out from

2   Plaintiff's obligation to log privileged

3   communications.

4           Let me hear from Netflix.  Is that ruling

5   clear?  Is there anything else you want to

6   raise?

7               MS. COHEN:  Your Honor, I think that

8   covers it.

9               THE COURT:  Okay.  Thank you very

10  much.

11          All right.  And Google and YouTube, that

12  covers yours as well; is that right?

13              MS. COHEN:  Your Honor, sorry.  This

14  is Rachel Cohen.  Just to be clear, the

15  obligation is on Robocast to log its documents

16  that are responsive even if they cover

17  litigation funding, and that is consistent with

18  its representation to the Court that its

19  business is licensing funding, and that goes to

20  issues such as valuation and invalidity.  And,

21  you know, we do cite multiple cases, including

22  from Judge Andrews, that discuss the relevance

23  of these documents.  We want to make sure they

24  are properly logged, and if they contend that

25  they happen to be privileged, that we can have

1    a record to be able to come back to the Court

2    if we disagree with their privilege claims.

3    Otherwise, we run the risk of coming back here

4    just to ask for documents that they withheld as

5    what they contend irrelevant without our

6    ability to challenge that.

7    THE COURT:  Right.  I have said that

8    if a document is responsive both to a request

9    that asks for documents pertaining to

10   litigation funding as well as another request

11   that pertains to something else -- I'm sure

12   that you have plenty of them that also cover

13   the litigation funding documents -- that that

14   needs to be logged.  If it solely has to do

15   with funding and it's not responsive to

16   anything else, they don't have to log it.  It's

17   hard for me to imagine that there would be a

18   document that would fall into that category.

19   MS. COHEN:  Thank you.

20   THE COURT:  All right.  Let's move on

21   to Robocast's letter.

22   I'm a little bit challenged here.

23   Actually, "little bit" is an understatement.

24   I'm a lot challenged here with respect to

25   Robocast's letter because it's asking me to

1    make some orders about production, and I don't

2    have in front of me any of Robocast's discovery

3    requests as required by the local rule.  Can

4    you show me where those are in the record?

5         MR. ELLERMAN:  Your Honor, I don't

6    know that we included the specific RFPs in the

7    record, but the issues are global, so they're

8    not something that we need to parse through

9    individual requests to discuss.

10        THE COURT:  And I would appreciate

11   that position more if I felt like we hadn't

12   already been here exactly on this issue and I

13   asked you all to parse through and discuss

14   exactly why certain requests needed e-mail

15   discovery.

16        MR. ELLERMAN:  That's what we have

17   been -- we've been completely unable to do

18   that, Your Honor, and we understood and

19   appreciated the Court's statements at the last

20   conference where you told the parties to

21   exchange ESI custodians, have a discussion with

22   those custodians about what they have and what

23   might be in their e-mail, and then have a

24   meaningful discussion with the other side and

25   explain what they have.  We've been willing to

1   do that from Robocast's standpoint, but the

2   problem we have is although Netflix has

3   disclosed ESI custodians, it has also in the

4   same breath said we're not going to produce any

5   e-mails to you no matter what.

6        So having that discussion with that

7   predetermined outcome of they're not going to

8   give us e-mails no matter what we say, no

9   matter what we point to, no matter what we

10  argue, is not productive, so what we've

11  requested is that the Court order Netflix that

12  it's going to have to engage in this process

13  with the idea that at the end of the process,

14  when it's concluded, it's going to have to

15  produce some scope of e-mails.  And we just

16  can't break past that barrier with Netflix.

17            THE COURT:  Did you get a list of ten

18  custodians from Netflix?  Is that part of the

19  issue?

20            MR. ELLERMAN:  Well, we previously

21  got three custodians only on technical topics.

22  We went back and forth and round and round,

23  asked for more.  We told them what topics we

24  wanted them on.  Last night -- or I'm sorry.

25  Not last night.  Friday, this past Friday, when

 1      the briefing was due, they disclosed two

 2      additional ESI custodians, a corporate

 3      controller and a marketing and operations

 4      director.  We had also asked for custodians on

 5      licensing and research and development.  We

 6      haven't gotten those yet.  We don't know if we

 7      will.  But in answer to your question, we've

 8      gotten five custodians.

 9                  THE COURT:  Let me turn it to

10      Netflix.

11            Did you not read the default rule to

12      identify at least ten?  And you can make the

13      argument why you don't need to produce the

14      custodians, but you need to at least give the

15      other side ten.

16                  MS. COHEN:  Hi, Your Honor.  Again,

17      this is Rachel Cohen for Netflix.

18            Your Honor, based on the June 2nd

19      teleconference, we understood that the parties

20      would have some flexibility to the default to

21      disclose custodians who have the most relevant

22      information and also discuss where the

23      documents are actually located as it relates to

24      the facts and issues in the case, and that's

25      exactly what we have sought to do here.

```
1          And we have disclosed now a total of
2    five, and we certainly would like to continue
3    to have a meaningful discussion with Robocast
4    about what they do and don't have.  And as
5    we've repeatedly explained to them and as they
6    have not acknowledged during the
7    meet-and-confer process, that many of the
8    documents they seek, including sales and
9    financials and licensing and source code, are
10   materials that are actually located in
11   noncustodial data sources.
12         The other issue, Your Honor, is we asked
13   to have a meaningful discussion as it relates
14   to all the ESI, and to date, they've only
15   disclosed two ESI custodians.  And, you know,
16   it's just less than a year ago they represented
17   to the Court that they had four employees in
18   opposing the transfer motion for Google and
19   that documents would be coming from those
20   individuals that were located on the East
21   Coast, and they've been unwilling to speak with
22   us about those.
23         So we've been happy to have a meaningful
24   discussion, but this case -- we believe, as it
25   relates to Robocast -- to Netflix, rather, the
```

1   number of custodians disclosed should be

2   tailored to the claims and the issues that are

3   presented here.  These claims that they've

4   acknowledged date back from over ten years.

5   They elected not to pursue their claims when

6   they had other litigations going.  Because the

7   cases failed, there's a very limited damages

8   window, and it relates to just direct

9   infringement claims.  And that's one of the

10   primary reasons why a lot of the documents we

11   expect and have been producing are in

12   noncustodial and not custodial data sources.

13          THE COURT:  I understand your

14   position on that.  Here's what I'll say about

15   the number of custodians issue:  I don't think

16   that my comments during the June teleconference

17   were unclear, and I'm looking here at page 31.

18   It says the parties can, if they haven't

19   already, exchange the names of ten custodians

20   just so both sides can see it, but this doesn't

21   necessarily mean that you have to search the

22   e-mail for all custodians.

23          So I know later that I talked about it

24   could be less, but I think read in context,

25   that more had to do with a party that might not

1   have ten employees.  So everybody needs --

2   everybody with more than ten employees needs to

3   have ten, and maybe you can put on there that

4   this person is unlikely to have any information

5   in their custodial files, but you can't say, I

6   don't think, with a straight face that they

7   don't have any e-mails that are relevant.  They

8   might be very marginally relevant, but you have

9   to produce them.  But you need to put them on

10  the list, and the local rule -- not the local

11  rule.  The default standard says it should go

12  from the most likely to least likely, but let

13  me turn to Robocast.

14      Have you given them two people?  Why

15  haven't you given four, given that it sounds

16  like you had more than two employees at least

17  at some point in time that's relevant to this

18  dispute?

19      MR. ELLERMAN:  We -- Your Honor, my

20  understanding is we only have two employees,

21  and we provided those two employees as our ESI

22  custodians.  And on top of that, we've already

23  produced 155,000 e-mails in this case.

24      THE COURT:  Okay.  I understand that.

25  Did you have any more than two employees during

32

1    any period of time that you're asking for

2    damages for?

3             MR. ELLERMAN:  I will have to go back

4    and double check that, Your Honor.  If that was

5    the case, we can address that.

6             THE COURT:  All right.  So put them

7    all on your list.  Okay.  So that's the number

8    of custodians issue.

9         With respect to e-mail discovery, I need

10   to understand a little bit more about where

11   we're at in the case.  So I understand that

12   we've still got documents being produced that

13   are not e-mail documents.  I understand that

14   the deadline for substantial completion of

15   document production isn't until November.  I

16   also understand that we didn't get document

17   requests from Robocast for four months after

18   the scheduling order was entered.  I understand

19   all of these things.

20        The thing that I need to know is, putting

21   aside e-mail discovery, when do Netflix and

22   YouTube and Google think they're going to be in

23   a position to produce what they need to produce

24   in this case, putting the e-mail discovery

25   aside?

1          And the reason why I'm asking is this:

2    Because I could be amenable to saying you don't

3    have to do e-mail discovery right now, but I

4    want to try to keep this case on the schedule,

5    so I need to know when you can produce the rest

6    of the stuff.

7          Go ahead.

8          MR. JAFFE:  Your Honor, this is

9    Jordan Jaffe on behalf of Google and YouTube.

10         With regard to the e-mail discovery and

11   the RFP issues, our situation is this:  They

12   did not propound any RFPs until May 15, 2023,

13   and those were, ballpark, 56.  And they were

14   largely duplicative and related to damages

15   issues.

16         We responded to those RFPs and have been

17   meeting and conferring with them about those

18   RFPs, and they have identified no specific

19   deficiency in our document production regarding

20   those RFPs.  They make blanket statements about

21   the number of documents we produced, but they

22   don't identify any specific RFP where we have

23   not produced sufficient documents.  We also

24   have produced source code and made that

25   available for inspection as well.  So that's

1    number one.

2         And then --

3              THE COURT:  Just to make sure, your

4    point of view is that you produced everything

5    that they've requested?

6              MR. JAFFE:  No, not everything.  We

7    are rolling production, but they haven't

8    identified anything that's deficient.  They

9    haven't identified anything where we haven't

10   produced something, where we haven't produced

11   noncustodial ESI information, and therefore, we

12   need to go to e-mail.

13        That goes to point two, which is we met

14   and conferred with them on their only

15   outstanding RFPs, and we said we don't think

16   e-mail makes sense for these.  And they haven't

17   come back with any specifics for the RFPs that

18   gives us guidance.

19        And at least our understanding, in

20   thinking about the prior teleconference with

21   Your Honor, was let's not do this in the

22   abstract.  Let's talk about specific requests

23   you have and whether e-mail was appropriate,

24   and that's exactly what we've done on behalf of

25   Google and YouTube, is gone to them and said

1     these RFPs don't make sense.

2          But just to be clear, we, on behalf of

3     Google and YouTube, are not saying no e-mail

4     discovery, period.  At least as of now, our

5     proposal is that it's phased, and specifically

6     what we proposed is the parties talk to each

7     other after the substantial completion of

8     document production deadline and identify any

9     issues where they think e-mail would be

10    necessary and proportional to the needs of the

11    case, and at that time, if there are any

12    remaining disputes, we bring them to the Court,

13    but that we do this in phases, where if there's

14    a sufficient production of noncustodial

15    information, that we don't need to go into

16    e-mail, as opposed to Robocast's position,

17    which is just this blanket position not even

18    tethered to any specific request for

19    production.

20         The last thing I'll mention before we

21    move on, which is in our letter brief, and this

22    is ECF 103 at Footnote 3, we noted the only

23    allegations of indirect and willful

24    infringement as to Google are for one of the

25    three patents-in-suit, which is the '451

1    patent, and to the extent that those claims are

2    dismissed, we don't believe that Robocast has

3    made any showing that e-mail is appropriate,

4    and we directed -- we cited our prior motion to

5    dismiss on this point, and Judge Andrews, in

6    denying the motion to dismiss as to the '451

7    patent, he permitted us leave to refile upon a

8    Federal Circuit order, which is the *In Re:*

9    *Sellix* case.

10           That happened to come out yesterday, so

11   we are analyzing that decision, and we plan to

12   refile a motion to dismiss to dismiss the '451

13   patent.  If and when that happens, we don't

14   think e-mail discovery will be appropriate at

15   all for Google and YouTube, given the lack of

16   indirect and willful infringement in the cases.

17   And that's an additional reason why we think

18   phasing is appropriate, because it will allow

19   that motion to play out, and we may not need to

20   get into e-mail discovery on those issues.  It

21   will give us time to have our motion be

22   briefed.

23           THE COURT:  Going back to my

24   question, I think the answer was in there, and

25   the answer is that you're going to be able to

1    be prepared to have completed your rolling

2    production of responses, non-e-mail documents,

3    by November and not earlier, and that we've

4    still got plenty of time between November and

5    the close of fact discovery in April to both

6    worry about the e-mails and get all the

7    depositions taken.  Is that fair to say?

8            MR. JAFFE:  On behalf of Google and

9    YouTube, that's fair, Your Honor.

10           THE COURT:  All right.  Okay.  Let me

11   hear from Robocast why Google's proposal is not

12   good enough for you.

13           MR. ELLERMAN:  Sure, Your Honor.

14       First of all, I want to make clear that

15   we don't have a dispute teed up with Google

16   between Robocast and Google on the sufficiency

17   or not of their document production.  We're

18   taking them at their word that they're going to

19   roll more substantial production out between

20   now and November.

21       That being said, we also don't have a

22   dispute, in my mind, with Google about whether

23   we're going to engage in e-mail discovery.

24   They have not said we are not producing

25   e-mails, so it's a different issue than the one

1    presented with Netflix.

2         But we do see a problem with the idea of

3    a phased e-mail discovery process because the

4    deadline for substantial completion of document

5    discovery is November 17th.  Under Google's

6    proposal, we would wait until, I guess, around

7    the first of the year to either have an

8    agreement on the scope of e-mail discovery or

9    come back to the Court and get an order on the

10   scope of e-mail discovery, and then we've got a

11   discovery deadline in April.  So that would

12   give us just a few very short months to

13   complete discovery and conduct depositions, and

14   we would need the e-mail discovery to be

15   completed before we start taking depositions in

16   this case.

17        So our fear is we're just going to get --

18   we're going to be in a situation where there

19   are large dumps of documents on or near the

20   substantial completion deadline in November.

21   Then we've got to sort out, after the holidays,

22   all the issues with e-mail discovery and figure

23   out what the scope of that is going to be, get

24   the e-mails produced, and then there's

25   virtually no time left to do discovery and take

```
 1     all the depositions we need to take.  We think
 2     if there's going to be a phasing-in of e-mail
 3     discovery, that process really needs to start
 4     now, Your Honor.
 5               THE COURT:  Isn't part of issue here
 6     that we lost four months due to the fact that
 7     you hadn't served requests until the summer?
 8               MR. ELLERMAN:  Well, I don't know.  I
 9     mean, we served our requests, and there's been
10     time to respond to those requests and start
11     producing documents.  We've not received much
12     in the way of documents at all from Google to
13     date.  It's even worse from Netflix.  We can
14     talk about that in our next issue, but, you
15     know, what I'm afraid is happening here is that
16     no matter when document requests are served --
17     and to be clear, we have served document
18     requests on issues unrelated to damages.  We
19     served technical requests as well.
20          We -- Google and Netflix keep reiterating
21     that their source code is available for review.
22     The fact of the matter is we were not able to
23     schedule source code review until right now
24     because the protective order wasn't entered
25     until last week.  So, you know, what I'm afraid
```

1    is happening here is that parties, defendants,
2    are just going to wait until closer to the
3    November deadline and see that as a deadline
4    when they need to produce documents instead of
5    when document requests are due, which is
6    30 days after the requests are served.
7              THE COURT:  I've got it.
8         All right.  One more question for Google,
9    and this is really what I was trying to get at
10   with my first question, which is given that
11   you're not producing e-mails right now, under
12   your proposal, you say you don't need to, is
13   there a reason why we can't get the document
14   production substantially complete before
15   November 17th such that we can build in a
16   little more time?  I may be more likely to
17   adopt your proposal if we had a little more
18   time built in.  Do you understand what I'm
19   asking?
20             MR. JAFFE:  Yes, Your Honor, and let
21   me address one item briefly about that.
22   Counsel for Robocast mentioned their technical
23   RFPs.  Those are not actually due until, I
24   think, a week from tomorrow.  It's not the case
25   that there's this broad outstanding set of

1    discovery.

2         With regard to the existing RFPs, the

3    ones that they propounded in May, I don't see a

4    reason why we couldn't substantially produce

5    completion to those before the deadline.  That

6    should be no problem.

7         But as they propound more and the parties

8    need to meet-and-confer on their scope and

9    whether they're appropriate, we can't really

10   commit on this record to doing that when we

11   don't even know what the RFPs are and what that

12   universe is.

13        THE COURT:  That's fair.  When do you

14   think, with respect to these documents that

15   have already been requested, it's the end of

16   August now, when do you think you'll be in a

17   position to have those mostly produced?

18        MR. JAFFE:  We just served

19   supplemental RFP responses to a number of those

20   RFPs, I want to say within the last week, and

21   so the next step there for us is meeting and

22   conferring with them to see if there's any sort

23   of specific areas that they have issues with

24   our supplemental responses on those issues.

25        Again, I'm hesitant to give a specific

1   time, but let me just kind of overarching --

2   our understanding is we produced substantially

3   the documents that comply with those RFPs based

4   on our current responses, and so it would be

5   kind of meeting and conferring with them on

6   additional documents that they believe are

7   appropriate in response to those RFPs.

8          THE COURT:  I think I understand what

9   you're saying.  Okay.

10         With respect to the e-mail discovery

11  issue, I think that Google's proposal is

12  appropriate, and it's the proposal that the

13  Court is going to adopt here with the

14  understanding that there's not -- this is not a

15  situation where Google is holding back

16  documents to dump on November 17th.  What I'm

17  hearing is they're getting produced as they get

18  identified and that outstanding documents are

19  the ones that the parties are working through

20  with respect to what's appropriate in their

21  meet-and-confers.

22         So okay.  I'm just getting all my

23  discovery letters organized here.

24         All right.  Let's talk about Netflix.

25  Does Google's proposal sound okay to Netflix as

1    well?

2              MS. COHEN:  So again, this is Rachel

3    Cohen for Netflix.

4              Your Honor, while I appreciate that

5    Google may be in the same situation in a few

6    months down the road if and when the '451

7    patent drops out of the case, we are in

8    substantially different footing at the present

9    time because the Court has already dismissed

10   the indirect and willful infringement claims

11   against Netflix.  The only claims in this case

12   are direct infringement.  Courts have found

13   that where there are only direct infringement

14   claims, the damages window is limited, as it is

15   in this case, and the patents have long

16   expired, that e-mail discovery is not relevant.

17   And Robocast's letter failed to identify a

18   single substantive reason associated with its

19   document requests that justifies e-mail

20   discovery from Netflix.  So at this juncture,

21   we don't think any discovery -- e-mail

22   discovery from Netflix is warranted, and we

23   have not argued any specific reason it is to

24   this Court.

25              THE COURT:  I understand counsel's

1  point on that.

2      So the way that it's presented to me is

3  the same dispute I think that I heard already

4  in June.  And again, I'm going to deny requests

5  for e-mail discovery at this point because of

6  the unique circumstances pointed out by

7  Netflix, but I'm not going to say that this is

8  something that can't be raised by Robocast

9  later on when they've identified a reason why

10  the e-mails are relevant, and I think the best

11  way to do that is to do it along with Google's

12  proposal as to the timing.

13      Let me just make sure for the record that

14  I understand from Netflix where they are in

15  terms of their document production.  Go ahead.

16      MS. COHEN:  So as it relates to

17  technical RFPs, they were only served last

18  week, so we are reviewing them and providing

19  our -- we will provide timely responses and

20  objections, and we will confirm the responsive

21  information.  So I want to make sure the record

22  is clear those only just were served, so we're

23  meeting our obligations, of course, for those

24  and the prior ones.

25      The prior requests, as the Court has

1      already acknowledged, they were served four

2      months after the ability to serve opening

3      requests.  They are limited to the issue of

4      damages.  We have been -- we timely served our

5      responses and objections, and we've been

6      rolling out production.  The last three weeks

7      alone, we made a production each week where I

8      think nearly 4,000 documents have been produced

9      relating to issues of Netflix's licenses, its

10     revenue information, what drives and does not

11     drive demand for Netflix, which is,

12     unsurprisingly, not related to the issues

13     products, rather its award-winning content.  So

14     we have been actively producing documents

15     related to the damages requests that were

16     served two months ago, and we will continue to

17     do so.

18          I think we're similarly situated to

19     Google with respect to the fact that we

20     certainly have every intent to produce our

21     responsive documents sufficiently in connection

22     with the schedule and the substantial

23     completion deadline for the ones that have been

24     served to date.

25          And in terms of the source code, I do

1    want to make clear that the source code, which

2    is the primary source of relevant information

3    for whether or not the accused functionality

4    infringes, has been available since April.

5    Robocast has not reviewed it, and contrary to

6    their representations that it relates to

7    Netflix in particular, we said they could come

8    look at the code consistent with the default

9    for source code, and they have declined to do

10   so.

11             THE COURT:  Okay.  Thank you.

12        Go ahead, counsel.

13             MR. ELLERMAN:  This is Will Ellerman.

14   May I respond to that?

15             THE COURT:  Sure.

16             MR. ELLERMAN:  First of all, let me

17   address the source code.  I touched on this.

18   We couldn't very well go review source code

19   because we had no provision worked out about

20   the source code manifest and, basically, the

21   table of contents of the source code and how

22   that was going to be handled.  We didn't get

23   that sorted out with Netflix and Google until

24   last week.  So looking at source code before

25   last week would have been looking for a needle

1    in a haystack.  It would have been a fruitless

2    endeavor.  We understand that the code has been

3    made available, but we've been severely

4    restricted in our ability to view it until now.

5         I want to give Your Honor just a sense of

6    what we have received to date from Netflix.

7    Taking out their prior art production, we've

8    gotten 60 documents totalling around 2,000

9    pages before late last night, when we got a

10   document production of a bunch of public SEC

11   filings for Netflix.  That's what it appears to

12   be.  We haven't had time to review it all yet.

13   But to date, what they have produced in this

14   case is 12 core technical documents, a bunch of

15   prior art documents, public SEC filings, public

16   news articles, and screenshots from their own

17   website and some licensing agreements.

18        We're concerned about this.  This is why

19   we've asked Netflix for a schedule repeatedly.

20   We've asked them when are you going to

21   substantially produce documents.  They refused

22   to tell us.  They refused to tell us the last

23   time we met-and-conferred a week and a half

24   ago, and then we got a dump last night of

25   public documents.

1    Your Honor, the most frustrating thing

2    about this, I think we heard it on the call

3    today, is that Netflix says the bulk of its

4    documents is going to come from non-custodial

5    data sources.  Netflix knows that, so it

6    obviously knows what documents it has.  It

7    knows where those documents are.  It has not

8    produced them, and it will not tell us when

9    it's going to produce them.

10    So we're concerned that we're going to

11    get up until November 17th and then we're

12    finally going to start getting documents and

13    then we're going to have to look and see what's

14    missing at that point and come back to the

15    Court and start this all over again after the

16    substantial completion of document discovery is

17    over, and that's going to jam us up on getting

18    discovery done, getting depositions done,

19    sorting out issues of e-mail discovery, and

20    everything else.

21    THE COURT:  Understood.  Understood.

22    Let me switch it to Netflix.

23    Do you disagree with his characterization

24    about what's been produced to date?  Have you

25    gone through and collected, for example,

1      financial documents that were requested from a

2      non-custodial status source and produced that,

3      and when do you expect that to be close to

4      done?

5            MS. COHEN:  Your Honor, we completely

6      disagree with the representations of Robocast's

7      counsel.

8            Just to level set at the very beginning,

9      first of all, these requests were served in

10     June.  Our responses were due in July, and

11     we've been producing since August.  So we

12     produced nearly 4,000 documents responsive to

13     their requests, and they've produced zero

14     documents.  No documents.  No e-mails from

15     their possession other than the documents that

16     they reproduced from the Microsoft and Apple

17     cases.

18            So it's really interesting that they're

19     taking issue with our production, which even

20     though there was a four-month lag from the time

21     we served our requests on March 1st of this

22     year and they served their first request in

23     June, we produced nearly 4,000 documents more

24     than they have in the relevant window.  So it's

25     really unfortunate where we are today, and they

1    have not identified a single RFP to you or to

2    us where they contend we haven't given

3    responsive information for which they are

4    seeking that we need to produce.

5          We are actively reviewing their requests,

6    and we told them -- we gave them proper

7    responses and objections and told them what

8    we're producing and where we need clarification

9    so we can meet our obligations.

10         And we told them we're producing on a

11   rolling basis, which is exactly what we've

12   done.  It seems like they're complaining we

13   produced documents last week and this week, but

14   that's exactly what we told them we would do,

15   consistent with the schedule and consistent

16   with our conduct in this case, which is to,

17   obviously, comply with our obligations and pull

18   the relevant material.  And that includes

19   revenue information, licensing information, and

20   how our products work.

21               THE COURT:  Understood.  All right.

22   We've got all that on the record now.  That's

23   helpful.

24         So I will again reiterate my ruling from

25   before, that we're not going to order any

1    e-mail discovery at this time, but I will just

2    remind everybody on the phone that that doesn't

3    mean that we're going to hold everything until

4    the substantial completion deadline.  Everyone

5    needs to keep moving.

6         And I will also say this:  And I get it,

7    that it's enticing to compare the burdens on

8    your clients versus the burdens on the other

9    side, and it seems to be a theme in this case,

10   and certainly Defendants are trying to paint a

11   picture for the Court that perhaps Plaintiffs

12   aren't so much interested in obtaining

13   discovery as much as they are interested in

14   causing Defendants to incur costs, and that's

15   the picture that Defendants are trying to

16   paint.

17        It seems to be going on on both sides,

18   and I understand that that may be the economics

19   of the situation in this case, but keep in mind

20   that the Court is actually needing to decide

21   what amount of discovery is proportional to the

22   needs of the case in accordance with the law,

23   so that needs to be microcomputed and I'm doing

24   the best I can on this limited record.

25        So let's turn to Robocast's next request

1      against Netflix, which it seems like we just

2      resolved, which has to do with the volume of

3      documents.  We discussed that on the record,

4      and now we've got Robocast's request for an

5      order compelling Netflix to produce responsive

6      documents from outside the damages period.

7              MR. ELLERMAN:  Yes, Your Honor.  Will

8      Ellerman.

9              THE COURT:  -- and I'll hear what

10     Netflix's position is.

11             MR. ELLERMAN:  So Netflix has refused

12     to produce any documents across the board from

13     outside the damages period, which is roughly

14     from 2016 to 2020.  Google says that it will

15     produce documents preceding the damages period

16     but only for prior art and comparable licenses.

17     Netflix says no documents whatsoever.  It's not

18     going to do it.

19          And we acknowledge the six-year lookback

20     on discovery imposed by the Court's default

21     order, but we also point out that that

22     provision could be modified upon a showing of

23     good cause, and here, we absolutely have good

24     cause.  We have necessary cause, and that's

25     because of the unique situation of this case.

1    Documents predating the damages period are

2    extremely relevant because the hypothetical

3    negotiation predates the damages period.

4         The hypothetical negotiation, as the

5    Court knows, is the date of first infringement,

6    and we cited the Court to authority that that

7    date can be outside the damages period.  The

8    oldest patent-in-suit here was issued in 2006,

9    and Netflix's and Google's playlist features

10   were introduced before 2016, which is the

11   beginning of the damages period.

12        We don't know exactly when that

13   hypothetical negotiation date is.  It's

14   sometime in there.  We hope to find that out

15   during discovery, but it's not just the date

16   that we need.  It's all of the relevant facts

17   surrounding that date that the parties would

18   have had knowledge of when they sat down at the

19   hypothetical negotiating table.  I will quote

20   here in the Federal Circuit in the later

21   *Dynamics* case where it said, "In considering

22   the 15 *Georgia-Pacific* factors, it is presumed

23   that the parties had full knowledge of the

24   facts and circumstances surrounding the

25   infringement at that time," at the time of the

1    hypothetical negotiation.

2         So what Netflix and Google are putting

3    Robocast in a position of is potentially having

4    an expert, a damages expert, trying to give an

5    opinion about a hypothetical negotiation

6    completely in the dark with no information from

7    the defendant about the accused functionality

8    during that time period and all of the facts

9    surrounding the *Georgia Pacific* factors during

10   that time period.  So for Netflix and Google to

11   say that we get no information that predates

12   2016 severely hamstrings our ability to

13   calculate a reasonable royalty in this case.

14            THE COURT:  Okay.  So the issue that

15   I'm having here is you're saying you want all

16   documents responsive that are prior to 2016,

17   and they're saying you should have no documents

18   prior to that date because you haven't

19   articulated what the relevance is.  Isn't it

20   right that what I should do is order them to

21   produce -- to go back and produce some

22   documents to the extent that they're relevant

23   to an issue that you just talked about, but not

24   respond to every single document you request

25   going back before 2016; right?

1      MR. ELLERMAN:  Well, as Your Honor --
2   Your Honor, as they -- as Netflix and Google
3   have both pointed out, the RFP set that we
4   served first was financial discovery, so all of
5   that goes to damages and the hypothetical
6   negotiation.
7      THE COURT:  Okay.  Here's what I'm
8   going to say:  I understand your point.  I'm
9   not going to say that your request is denied,
10  but I'm not going to grant it at this point.
11  And the reason why is I don't have your
12  request.  I have no basis to say what's
13  appropriate to go back or whether there's good
14  cause to go back.  So pick the requests you
15  want to have some discovery, and those -- and
16  you should be able to explain to them why you
17  need documents outside of 2016.
18      I disagree that documents from 2016 are
19  never going to be -- prior to 2016 are never
20  going to be relevant, but I don't understand
21  that to be what Netflix was saying.  Netflix
22  was saying you've got to say what you want and
23  articulate the basis for why you need it, and I
24  agree with them on that.  You can reraise with
25  the Court.  I need to have your requests.

```
 1                MR. ELLERMAN:  Your Honor, may I
 2      clarify a couple of things?
 3                THE COURT:  Yes.
 4                MR. ELLERMAN:  First of all, it has
 5      been very clear from Netflix that this is not a
 6      request-by-request issue, it's an
 7      across-the-board issue, but I understand the
 8      Court's ruling.
 9           I do want to point out one thing, though,
10      and that there are likely documents from before
11      and after the damages period that reflect
12      information from within the damages period, and
13      Netflix and Google shouldn't be able to draw an
14      arbitrary line that they're only going to
15      produce documents that were created during the
16      damages period.  There could be documents
17      predating the damages period that contain
18      information like financial forecasts for the
19      damages period or documents after the period
20      that contain historical data about historical
21      revenues and things like that.  I don't think
22      this bright line distinction of we're only
23      giving you things created during the damages
24      period is ever appropriate.
25                THE COURT:  All right.  Thanks for
```

1     that.  I just said it wasn't, and that's how

2     we're going to move forward.  So talk with them

3     about what things you want from prior to 2016,

4     and we'll talk about what the burden is, and

5     we'll decide if you have good cause to get it.

6     Right now, I can't rule on this.

7          So your request to compel, to the extent

8     it's a request to compel, is going to be denied

9     at this point.  But they understand from

10    listening to what I said today that they need

11    to work with you a little bit on this.

12         All right.  What do we have left?

13    Anything else that you want from Netflix?

14              MR. ELLERMAN:  I believe that is all

15    of Robocast's issues, Your Honor.

16              THE COURT:  Okay.  And anything that

17    you want from Google?

18              MR. JAFFE:  Your Honor, this is

19    Jordan Jaffe.  I think we covered all the

20    issues for Google, and the last one on our list

21    was the time period issue.

22         If I may add just one item on that, we

23    didn't see any argument from them that

24    information after the expiration date was

25    relevant.  They didn't make any arguments about

58

```
1    that in their brief, and so we understand that
2    issue to be undisputed.  But we take Your
3    Honor's ruling that they can articulate the
4    request, and we'll deal with it at that time.
5            THE COURT:  Okay.  Great.  I think
6    that makes a ton of sense, and it's very
7    reasonable.
8            All right.  Anything else anybody else
9    wants to say before we call it a day?
10           All right.  Great.  Everyone take care.
11   Bye-bye.
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
1                    C E R T I F I C A T E

2    STATE OF DELAWARE        )
                              ) ss:
3    COUNTY OF NEW CASTLE      )

4           I, Deanna L. Warner, a Certified

5    Shorthand Reporter, do hereby certify that as

6    such Certified Shorthand Reporter, I was

7    present at and reported in Stenotype shorthand

8    the above and foregoing proceedings in Case

9    Number 22-CV-305-RGA-JLH, ROBOCAST vs. NETFLIX,

10   heard on August 29, 2023.

11          I further certify that a transcript of

12   my shorthand notes was typed and that the

13   foregoing transcript, consisting of 59

14   typewritten pages, is a true copy of said

15   DISCOVERY CONFERENCE.

16          SIGNED, OFFICIALLY SEALED, and FILED

17   with the Clerk of the District Court, NEW

18   CASTLE County, Delaware, this 3rd day of

19   September, 2023.

20
                       _____
21
                       Deanna L. Warner, CSR, #1687
22                     Speedbudget Enterprises, LLC

23

24

25
```

| # | | | |
|---|---|---|---|

**#1687** [1] - 59:21

**'**

**'451** [4] - 35:23, 36:4, 36:10, 43:3
**'rogs** [1] - 7:19

**1**

**1** [1] - 8:18
**103** [1] - 35:20
**11** [1] - 8:18
**12** [2] - 8:16, 47:10
**15** [2] - 33:11, 53:17
**155,000** [1] - 31:22
**155,000-some-odd** [1] - 19:2
**17th** [4] - 38:3, 40:13, 42:13, 48:7
**1st** [3] - 5:5, 9:12, 49:16

**2**

**2** [1] - 6:15
**2,000** [1] - 47:4
**2006** [1] - 53:3
**2012** [1] - 19:22
**2014** [10] - 15:19, 15:20, 18:19, 19:4, 19:9, 19:19, 20:2, 20:9, 20:18, 21:18
**2016** [12] - 15:22, 16:20, 19:11, 52:9, 53:5, 54:7, 54:11, 54:20, 55:12, 55:13, 55:14, 56:23
**2020** [4] - 15:23, 16:20, 19:12, 52:9
**2023** [4] - 1:20, 33:11, 59:10, 59:19
**22-304** [2] - 4:1, 4:4
**22-305** [1] - 3:4
**22-354** [1] - 3:5
**22-CV-305-RGA** [1] - 1:5
**22-CV-305-RGA-JLH** [1] - 59:9
**22-CV-354-RGA** [1] - 1:11
**25** [6] - 7:6, 8:8, 8:13, 8:20, 8:23, 9:7
**25-interrogatory** [1] - 8:15

**26** [5] - 10:8, 11:21, 12:6, 12:11, 13:6
**26(a** [1] - 10:5
**29** [1] - 59:10
**29th** [1] - 1:20
**2nd** [1] - 28:17

**3**

**3** [1] - 35:20
**30** [1] - 40:4
**31** [1] - 30:16
**3rd** [1] - 59:18

**4**

**4** [1] - 19:1
**4,000** [3] - 45:4, 49:8, 49:18
**45** [1] - 8:24

**5**

**56** [1] - 33:12
**59** [1] - 59:13

**6**

**60** [1] - 47:4

**A**

**ability** [6] - 13:6, 13:15, 25:6, 44:23, 46:25, 54:7
**able** [6] - 13:23, 25:1, 36:23, 39:20, 55:11, 56:8
**absolutely** [1] - 52:18
**abstract** [1] - 34:21
**acceleration** [1] - 22:20
**accordance** [1] - 51:17
**accused** [4] - 11:13, 19:21, 45:24, 54:2
**acknowledge** [1] - 52:14
**acknowledged** [4] - 10:18, 29:5, 30:3, 44:22
**acknowledges** [1] - 15:15
**across-the-board** [1] - 56:2
**actively** [2] - 45:10, 49:25

**activity** [1] - 20:17
**add** [3] - 4:18, 5:24, 57:17
**addition** [1] - 7:16
**additional** [3] - 28:2, 36:15, 42:3
**address** [5] - 3:24, 7:8, 32:4, 40:18, 46:13
**admitted** [1] - 15:19
**adopt** [2] - 40:14, 42:10
**advantage** [1] - 22:14
**advisory** [1] - 13:21
**afraid** [2] - 39:13, 39:23
**afternoon** [5] - 3:1, 3:9, 3:13, 3:16, 4:2
**ago** [4] - 19:13, 29:15, 45:12, 47:20
**agree** [4] - 6:5, 12:5, 21:13, 55:19
**agreed** [2] - 15:2, 21:16
**agreement** [1] - 38:6
**agreements** [1] - 47:13
**agrees** [1] - 9:7
**ahead** [4] - 14:2, 33:6, 44:11, 46:8
**allegations** [1] - 35:21
**alleged** [4] - 6:17, 15:22, 16:19, 18:4
**allow** [1] - 36:16
**allows** [1] - 16:9
**alone** [1] - 45:3
**amenable** [1] - 33:1
**amount** [1] - 51:16
**analysis** [1] - 14:11
**analyzing** [1] - 36:9
**AND** [1] - 1:2
**Andrews** [3] - 22:11, 24:22, 36:3
**Andrews'** [1] - 10:9
**answer** [5] - 7:5, 7:7, 28:7, 36:22, 36:23
**answers** [1] - 9:24
**appearances** [1] - 3:6
**APPEARANCES** [1] - 2:1
**apple** [4] - 14:14, 15:18, 20:20, 49:12
**applies** [1] - 4:24
**apply** [1] - 22:16
**appreciate** [2] - 26:10, 43:1
**appreciated** [1] - 26:19
**appropriate** [11] - 9:19, 34:22, 36:1,

36:12, 36:16, 41:6, 42:4, 42:9, 42:17, 55:8, 56:19
**April** [3] - 37:3, 38:9, 45:25
**arbitrary** [1] - 56:9
**areas** [1] - 41:20
**argue** [2] - 8:9, 27:10
**argued** [1] - 43:19
**argues** [1] - 16:1
**argument** [4] - 4:18, 18:16, 28:12, 57:18
**arguments** [1] - 57:20
**art** [3] - 47:3, 47:11, 52:11
**articles** [1] - 47:12
**articulate** [2] - 55:18, 57:23
**articulated** [1] - 54:14
**aside** [4] - 16:4, 20:18, 32:20, 32:24
**assert** [1] - 18:2
**asserting** [1] - 10:17
**assertion** [1] - 17:24
**associated** [1] - 43:15
**attempt** [1] - 9:17
**attempted** [1] - 11:23
**August** [4] - 1:20, 41:13, 49:7, 59:10
**authority** [3] - 13:16, 22:10, 53:1
**available** [4] - 33:24, 39:19, 45:25, 46:24
**award** [1] - 45:9
**award-winning** [1] - 45:9

**B**

**ballpark** [1] - 33:12
**bar** [1] - 18:8
**barrier** [1] - 27:16
**based** [2] - 12:1, 28:17, 41:25
**basis** [4] - 10:17, 50:6, 55:7, 55:18
**bay** [1] - 22:20
**Bayard** [1] - 3:10
**BAYARD** [1] - 2:2
**beginning** [2] - 49:4, 53:6
**behalf** [9] - 3:10, 3:18, 4:7, 4:21, 6:2, 33:8, 34:23, 35:1, 37:6
**believes** [1] - 7:14
**best** [4] - 13:6, 13:14, 44:6, 51:19
**better** [1] - 7:5
**between** [4] - 11:12,

37:2, 37:14, 37:17
**beyond** [1] - 16:11
**big** [2] - 17:13, 20:5
**bit** [6] - 14:2, 21:2, 25:21, 25:22, 32:9, 57:6
**blanket** [1] - 33:19, 35:15
**board** [2] - 52:7, 56:2
**book** [1] - 16:9
**break** [1] - 27:16
**breath** [1] - 27:4
**brief** [6] - 6:4, 6:7, 7:8, 9:2, 35:19, 57:21
**briefed** [1] - 36:20
**briefing** [6] - 7:16, 7:20, 9:17, 12:19, 23:1, 28:1
**briefly** [1] - 40:18
**bright** [1] - 56:17
**bring** [1] - 35:11
**bringing** [1] - 21:10
**broad** [1] - 40:22
**build** [1] - 40:13
**built** [1] - 40:16
**bulk** [1] - 47:24
**bunch** [2] - 47:6, 47:10
**burden** [6] - 9:20, 11:24, 16:25, 18:3, 21:4, 56:24
**burdens** [1] - 51:2, 51:3
**burdensome** [4] - 17:2, 18:1, 20:11, 21:9
**Burke** [2] - 6:14, 6:20
**business** [3] - 17:14, 17:15, 24:19
**BY** [3] - 2:2, 2:16, 2:19
**bye** [2] - 58:6
**bye-bye** [1] - 58:6

**C**

**calculate** [1] - 54:8
**calculation** [1] - 13:17
**capital** [1] - 17:14
**care** [1] - 58:5
**Carrington** [1] - 3:22
**carve** [1] - 23:15
**carved** [1] - 23:22
**carving** [2] - 23:18, 24:1
**Case** [3] - 1:5, 1:11, 59:8
**case** [47] - 5:2, 6:13, 6:20, 8:10, 10:7, 10:10, 10:20, 11:7,

13:8, 13:9, 13:12, 13:22, 13:25, 15:22, 16:23, 17:9, 17:18, 18:8, 18:10, 19:11, 20:4, 22:16, 22:19, 23:5, 28:23, 29:23, 31:22, 32:4, 32:10, 32:23, 33:3, 35:9, 36:7, 38:14, 40:21, 43:4, 43:8, 43:12, 47:10, 50:11, 51:4, 51:14, 51:17, 52:20, 53:16, 54:8
**caselaw** [2] - 7:8, 7:18
**cases** [8] - 20:20, 22:11, 22:15, 23:9, 24:21, 30:6, 36:14, 49:12
**Casey** [2] - 3:11, 7:13
**CASEY** [1] - 2:5
**CASTLE** [2] - 59:3, 59:18
**category** [1] - 25:18
**causing** [1] - 51:9
**certain** [1] - 26:14
**certainly** [4] - 5:21, 29:1, 45:16, 51:5
**Certified** [1] - 59:4, 59:6
**certify** [2] - 59:5, 59:11
**challenge** [1] - 25:6
**challenged** [2] - 25:22, 25:23
**characterization** [1] - 48:19
**check** [1] - 32:3
**Circuit** [3] - 16:8, 36:6, 53:15
**circumstances** [4] - 5:15, 14:21, 44:2, 53:19
**cite** [3] - 12:2, 13:22, 24:21
**cited** [8] - 7:17, 10:25, 13:20, 22:10, 22:15, 23:10, 36:2, 53:1
**cites** [1] - 13:8
**claim** [3] - 13:12, 16:22, 22:3
**claims** [10] - 16:16, 25:2, 30:1, 30:2, 30:4, 30:8, 35:24, 43:7, 43:8, 43:11
**clarification** [1] - 50:3
**clarify** [2] - 12:12, 55:22
**clear** [8] - 24:5, 24:14, 35:1, 37:12, 39:15, 44:18, 45:22, 55:25

**Clerk** [1] - 59:17
**clients** [1] - 51:3
**close** [2] - 37:3, 48:24
**closer** [1] - 39:25
**co** [2] - 3:20, 4:5
**co-counsel** [2] - 3:20, 4:5
**coast** [1] - 29:20
**code** [14] - 29:8, 33:23, 39:19, 39:21, 45:21, 45:22, 46:4, 46:5, 46:13, 46:14, 46:16, 46:17, 46:20, 46:23
**Cohen** [9] - 3:21, 3:23, 4:21, 6:3, 7:4, 10:3, 24:14, 28:16, 42:25
**COHEN** [2] - 2:12, 4:20, 10:3, 15:8, 24:7, 24:13, 25:19, 28:15, 42:24, 44:12, 49:1
**collected** [1] - 48:21
**coming** [2] - 25:3, 29:18
**comments** [1] - 30:15
**commercial** [1] - 20:17
**commit** [1] - 41:7
**committee** [1] - 13:21
**commonly** [1] - 5:12
**communication** [1] - 21:5
**communications** [1] - 24:3
**company** [2] - 20:5, 20:16
**comparable** [1] - 52:11
**compare** [1] - 51:2
**compel** [2] - 57:2, 57:3
**compelling** [1] - 51:25
**competed** [1] - 16:16
**competing** [1] - 11:17
**competitors** [1] - 11:19
**complaining** [1] - 50:7
**complete** [3] - 13:24, 38:11, 40:12
**completed** [2] - 36:24, 38:13
**completely** [2] - 26:17, 49:1, 54:1
**completion** [8] - 32:13, 35:6, 38:2, 38:18, 41:2, 45:19, 48:12, 50:24
**complied** [1] - 13:5
**comply** [4] - 7:24, 8:4,

41:25, 50:12
**component** [1] - 17:7
**comprise** [2] - 6:25, 7:19
**compromise** [1] - 7:21
**computation** [1] - 10:12
**concerned** [2] - 47:14, 48:6
**concluded** [2] - 20:21, 27:14
**conduct** [2] - 38:11, 50:11
**confer** [2] - 29:6, 41:5
**conference** [1] - 26:20
**CONFERENCE** [3] - 1:16, 1:18, 59:15
**conferred** [2] - 34:13, 47:19
**conferring** [1] - 33:16, 41:19, 42:2
**confers** [1] - 42:18
**confirm** [1] - 44:16
**conflow** [1] - 10:10
**connection** [1] - 45:17
**considering** [1] - 53:16
**consistent** [10] - 5:11, 5:17, 5:18, 10:9, 17:16, 17:19, 24:17, 46:4, 50:10
**consisting** [1] - 59:13
**contain** [2] - 56:12, 56:15
**contend** [3] - 24:24, 25:5, 49:22
**content** [1] - 45:9
**contents** [1] - 46:17
**context** [1] - 30:23
**continue** [2] - 29:1, 45:12
**contrary** [1] - 46:1
**controller** [1] - 28:3
**copy** [1] - 59:14
**core** [1] - 47:10
**corporate** [1] - 28:2
**correct** [1] - 14:18
**correctly** [1] - 6:14
**costs** [1] - 51:9
**Cottrell** [1] - 4:3
**COTTRELL** [1] - 2:16
**counsel** [8] - 2:7, 2:20, 3:20, 4:5, 21:25, 40:19, 46:8, 49:3
**Counsel** [1] - 2:14
**counsel's** [1] - 43:21
**counted** [1] - 9:19
**counting** [2] - 5:2, 6:6

**COUNTY** [1] - 59:3
**County** [1] - 59:18
**couple** [4] - 7:15, 10:2, 22:11, 55:22
**course** [4] - 7:5, 16:8, 18:2, 44:19
**Court** [32] - 3:24, 5:17, 5:18, 5:20, 7:9, 7:17, 9:17, 9:18, 9:20, 10:19, 17:12, 22:10, 23:2, 23:15, 24:18, 25:1, 27:11, 29:16, 35:11, 38:7, 42:10, 43:6, 43:20, 44:21, 48:11, 51:6, 51:15, 52:25, 53:1, 55:20, 59:17
**COURT** [48] - 1:1, 3:1, 3:13, 3:25, 4:8, 5:23, 7:10, 8:7, 8:25, 9:14, 12:3, 12:14, 12:17, 12:20, 14:5, 14:20, 18:12, 20:6, 21:6, 23:17, 24:9, 25:7, 25:20, 26:10, 27:17, 28:9, 30:12, 31:23, 32:5, 34:2, 36:21, 37:8, 39:3, 40:5, 41:10, 42:5, 43:21, 46:7, 46:11, 48:17, 50:16, 52:4, 54:9, 55:2, 55:23, 56:20, 57:11, 57:25
**court** [3] - 4:9, 5:12, 5:13
**Court's** [5] - 10:24, 23:14, 26:19, 52:15, 56:3
**Courts** [3] - 22:18, 23:6, 43:9
**cover** [2] - 24:16, 25:12
**covered** [1] - 57:14
**covers** [2] - 24:8, 24:12
**Cragg** [1] - 3:19
**CRAGG** [1] - 2:9
**created** [3] - 20:2, 56:10, 56:18
**CSR** [1] - 59:21
**current** [3] - 12:14, 12:21, 42:1
**custodial** [4] - 30:11, 31:4, 47:25, 48:23
**custodians** [17] - 26:21, 26:22, 27:3, 27:18, 27:21, 28:2, 28:4, 28:8, 28:13, 28:20, 29:14, 29:25, 30:14, 30:18, 30:21,

31:21, 32:7

## D

**damages** [34] - 10:6, 11:6, 13:5, 13:10, 13:14, 13:17, 13:24, 15:21, 16:20, 16:21, 18:11, 19:11, 30:6, 32:1, 33:13, 39:16, 43:11, 44:25, 45:11, 52:1, 52:8, 52:10, 52:21, 52:23, 53:2, 53:6, 53:24, 54:25, 56:6, 56:7, 56:11, 56:12, 56:14, 56:18
**dark** [1] - 54:1
**data** [4] - 29:10, 30:11, 48:1, 56:15
**date** [19] - 14:4, 16:11, 17:19, 19:10, 21:18, 29:13, 30:3, 39:11, 45:20, 47:2, 47:9, 48:20, 52:25, 53:2, 53:8, 53:10, 53:12, 54:13, 57:19
**dating** [2] - 18:19, 19:4
**days** [1] - 40:4
**deadline** [10] - 32:13, 35:7, 38:2, 38:9, 38:18, 40:1, 41:2, 45:19, 50:24
**deal** [1] - 57:24
**Deanna** [2] - 59:4, 59:21
**decide** [2] - 51:15, 56:25
**decision** [1] - 36:9
**decisions** [1] - 10:9
**declined** [1] - 46:5
**default** [5] - 28:10, 28:19, 31:10, 46:4, 52:15
**defend** [3] - 5:2, 5:9, 6:6
**Defendant** [2] - 1:8, 1:14
**defendant** [5] - 4:22, 4:23, 21:20, 22:13, 54:2
**defendant's** [3] - 4:16, 14:1, 23:20
**defendants** [7] - 4:7, 5:1, 6:15, 39:24, 51:5, 51:9, 51:10
**deficiency** [1] - 33:18
**deficient** [3] - 10:5, 18:17, 34:7

**Delaware** [1] - 59:18
**DELAWARE** [2] - 1:2, 59:2
**delete** [1] - 13:3
**deleted** [1] - 14:8
**demand** [1] - 45:7
**denied** [2] - 55:4, 57:3
**deny** [1] - 43:25
**denying** [1] - 36:4
**depositions** [5] - 37:5, 38:11, 38:13, 38:24, 48:14
**describe** [1] - 6:15
**described** [1] - 6:18
**determine** [1] - 12:21
**development** [2] - 6:16, 28:5
**deviating** [1] - 5:20
**DFT** [1] - 4:2
**different** [2] - 37:23, 43:5
**dig** [1] - 19:18
**direct** [3] - 30:7, 43:9, 43:10
**directed** [2] - 11:4, 36:2
**director** [1] - 28:4
**disagree** [6] - 9:3, 9:15, 25:2, 48:19, 49:2, 55:13
**disclose** [4] - 11:21, 11:25, 13:13, 28:20
**disclosed** [6] - 13:11, 27:3, 28:1, 28:25, 29:14, 29:25
**disclosure** [4] - 10:12, 10:21, 13:24, 23:6
**disclosures** [7] - 10:5, 12:6, 12:12, 12:15, 12:22, 13:1, 13:4
**DISCOVERY** [3] - 1:16, 1:18, 59:15
**discovery** [46] - 3:3, 5:22, 11:14, 11:24, 13:19, 15:4, 26:2, 26:15, 32:8, 32:20, 32:23, 33:2, 33:9, 35:3, 36:12, 36:18, 37:3, 37:21, 38:1, 38:3, 38:6, 38:8, 38:9, 38:11, 38:12, 38:20, 38:23, 39:1, 40:23, 42:7, 42:20, 43:13, 43:16, 43:18, 44:1, 48:12, 48:14, 48:15, 50:21, 51:8, 51:16, 52:15, 53:10, 54:24, 55:10
**discreet** [1] - 8:24
**discrete** [3] - 6:10,

6:22, 6:25
**discuss** [5] - 22:2, 24:22, 26:9, 26:13, 28:21
**discussed** [2] - 16:5, 51:23
**discussion** [6] - 26:21, 26:24, 27:6, 29:2, 29:12, 29:23
**discussions** [1] - 16:12
**dismiss** [4] - 36:3, 36:4, 36:10
**dismissed** [2] - 35:25, 43:6
**dispute** [10] - 4:23, 4:25, 6:8, 17:6, 17:8, 21:7, 31:17, 37:13, 37:20, 43:24
**disputes** [5] - 3:3, 3:24, 4:17, 5:22, 35:10
**distinction** [1] - 56:17
**distinguishable** [1] - 13:9
**district** [3] - 22:18, 23:6, 23:9
**District** [1] - 59:17
**DISTRICT** [2] - 1:1, 1:2
**document** [26] - 15:10, 20:2, 21:15, 22:18, 22:23, 23:19, 23:22, 23:23, 25:8, 25:18, 32:14, 32:15, 33:18, 35:6, 37:15, 38:2, 39:14, 39:15, 40:3, 40:11, 43:15, 44:11, 47:6, 48:12, 54:19
**document-by-document** [1] - 21:15
**documentation** [1] - 19:16
**documents** [89] - 15:14, 15:15, 15:20, 15:24, 16:3, 16:6, 17:3, 17:6, 17:21, 17:25, 18:5, 18:7, 18:19, 19:1, 19:2, 19:4, 20:8, 20:12, 20:24, 21:11, 21:18, 21:20, 21:24, 22:5, 22:8, 22:12, 22:21, 23:4, 23:12, 23:14, 23:16, 23:25, 24:15, 24:23, 25:4, 25:9, 25:13, 28:22, 29:7, 29:18, 30:9, 32:11, 32:12, 33:20, 33:22, 36:25, 38:17, 39:9,

39:10, 40:2, 41:11, 41:25, 42:3, 42:13, 42:15, 45:4, 45:10, 45:17, 47:4, 47:10, 47:11, 47:17, 47:21, 47:25, 48:2, 48:3, 48:8, 48:22, 49:8, 49:9, 49:10, 49:11, 49:18, 50:8, 51:23, 52:1, 52:7, 52:10, 52:12, 52:21, 54:11, 54:12, 54:17, 55:12, 55:13, 56:5, 56:10, 56:11, 56:14
**done** [7] - 4:15, 12:11, 34:23, 48:14, 48:25, 50:7
**double** [1] - 32:3
**down** [3] - 19:16, 43:3, 53:13
**draw** [1] - 56:8
**drive** [1] - 45:7
**drives** [1] - 45:6
**drop** [1] - 14:25
**dropped** [2] - 14:23, 16:5
**drops** [1] - 43:4
**due** [5] - 28:1, 39:4, 40:3, 40:20, 49:6
**dump** [2] - 42:13, 47:20
**dumps** [1] - 38:17
**duplicative** [1] - 33:13
**duration** [1] - 11:8
**during** [10] - 20:13, 21:2, 29:5, 30:15, 31:24, 53:10, 54:3, 54:4, 56:10, 56:18
**dynamics** [1] - 53:16

**E**

**e-mail** [32] - 26:14, 26:23, 30:21, 32:8, 32:12, 32:20, 32:23, 33:2, 33:9, 34:11, 34:15, 34:22, 35:2, 35:8, 35:14, 36:1, 36:12, 36:18, 37:21, 38:1, 38:6, 38:8, 38:12, 38:20, 38:25, 42:7, 43:13, 43:16, 43:18, 44:1, 48:15, 50:21
**e-mails** [12] - 19:3, 27:5, 27:8, 27:15, 31:6, 31:22, 37:4, 37:23, 38:22, 40:9, 44:6, 49:10

**easiest** [1] - 6:7
**East** [1] - 29:19
**ECF** [1] - 35:20
**economics** [1] - 51:13
**efforts** [4] - 6:16, 11:13, 17:15, 17:23
**either** [2] - 20:22, 38:5
**elected** [1] - 30:4
**Ellerman** [5] - 3:12, 12:10, 18:24, 46:9, 52:3
**ELLERMAN** [24] - 2:5, 12:9, 12:16, 12:18, 12:24, 14:18, 18:23, 20:10, 22:7, 26:5, 26:16, 27:20, 31:18, 32:2, 37:11, 39:6, 46:9, 46:12, 52:2, 52:6, 54:21, 55:21, 55:24, 57:9
**Elliott** [1] - 3:21
**ELLIOTT** [2] - 2:12
**employees** [7] - 29:16, 30:25, 31:1, 31:15, 31:19, 31:20, 31:24
**end** [2] - 27:13, 41:12
**endeavor** [1] - 46:23
**enforcement** [1] - 17:23
**engage** [3] - 5:14, 27:12, 37:21
**entered** [2] - 32:17, 39:22
**Enterprises** [1] - 59:22
**enticing** [1] - 51:2
**entire** [1] - 8:22
**ESI** [7] - 26:21, 27:3, 28:2, 29:13, 29:14, 31:20, 34:10
**ESQ** [12] - 2:2, 2:5, 2:5, 2:6, 2:9, 2:9, 2:12, 2:12, 2:13, 2:16, 2:17, 2:19
**essentially** [1] - 14:17
**establish** [1] - 22:25
**eve** [1] - 13:11
**evidence** [1] - 10:12
**exact** [1] - 18:22
**exactly** [9] - 19:13, 20:6, 26:12, 26:14, 28:24, 34:23, 50:6, 50:9, 53:7
**example** [3] - 6:14, 13:22, 48:21
**exceeded** [1] - 8:15
**exchange** [2] - 26:21, 30:18
**exchanged** [2] - 7:15, 21:14

**exchanges** [1] - 15:17
**exhibit** [1] - 14:6
**exist** [1] - 20:13
**existing** [1] - 40:24
**expect** [2] - 30:10, 48:24
**expert** [1] - 53:24
**expiration** [1] - 57:19
**expired** [1] - 43:12
**explain** [4] - 11:1, 23:3, 26:25, 55:11
**explained** [4] - 6:20, 16:8, 19:6, 29:4
**explanation** [1] - 11:3
**extend** [1] - 9:20
**extent** [6] - 5:13, 10:13, 19:17, 35:24, 54:17, 57:2
**extremely** [1] - 52:22

**F**

**face** [1] - 31:5
**fact** [9] - 8:24, 12:7, 17:1, 20:4, 23:5, 37:3, 39:4, 39:20, 45:15
**factor** [2] - 11:9, 11:11
**factors** [3] - 16:7, 53:17, 54:4
**facts** [5] - 5:15, 28:23, 53:11, 53:18, 54:3
**failed** [2] - 30:6, 43:14
**fair** [3] - 37:5, 37:7, 41:10
**faith** [1] - 10:17
**fall** [1] - 25:18
**far** [1] - 19:23
**Farnan** [1] - 3:17
**FARNAN** [2] - 2:9, 3:16
**fear** [1] - 38:15
**feature** [1] - 19:21
**features** [1] - 53:4
**Federal** [3] - 16:8, 36:6, 53:15
**felt** [1] - 26:11
**few** [2] - 38:10, 43:2
**figure** [1] - 38:20
**FILED** [1] - 59:16
**files** [1] - 31:4
**filings** [2] - 47:7, 47:11
**final** [1] - 8:19
**finally** [2] - 10:18, 48:8
**finance** [1] - 17:14
**financial** [4] - 13:19, 48:22, 54:24, 56:13
**financials** [1] - 29:8

**financing** [2] - 17:7, 17:11
**fine** [2] - 4:8, 21:15
**FINGER** [2] - 2:8, 2:16
**Finger** [1] - 3:18
**first** [16] - 4:23, 6:18, 6:19, 10:15, 13:11, 18:25, 19:24, 37:12, 38:5, 40:8, 46:12, 49:5, 49:17, 52:25, 54:24, 55:24
**five** [3] - 11:11, 28:8, 29:1
**flexibility** [1] - 28:19
**focus** [2] - 18:14, 18:17
**footing** [1] - 43:5
**footnote** [1] - 35:20
**FOR** [1] - 1:2
**forced** [1] - 8:3
**forecasts** [1] - 56:13
**foregoing** [2] - 59:8, 59:13
**forth** [1] - 27:22
**forward** [1] - 56:22
**four** [6] - 29:16, 31:14, 32:16, 39:4, 44:22, 49:15
**four-month** [1] - 49:15
**FRED** [1] - 2:16
**Fred** [1] - 4:3
**Friday** [2] - 27:25
**front** [3] - 7:17, 12:15, 26:1
**fruitless** [1] - 46:22
**frustrating** [1] - 47:22
**full** [2] - 10:13, 53:18
**functionality** [2] - 45:24, 54:2
**funding** [20] - 17:7, 17:10, 20:25, 22:2, 22:5, 22:8, 22:12, 22:17, 22:21, 23:3, 23:7, 23:12, 23:16, 23:21, 23:24, 24:17, 24:19, 25:10, 25:13, 25:15
**funding-related** [1] - 22:12

### G

**Georgia** [5] - 11:9, 11:11, 16:7, 53:17, 54:4
**Georgia-Pacific** [2] - 11:9, 53:17
**given** [12] - 12:7, 13:15, 13:18, 14:22,

19:4, 19:15, 31:13, 31:14, 36:13, 40:8, 49:22
**global** [1] - 26:7
**GOLDEN** [2] - 2:2, 3:8
**golden** [1] - 3:9
**good-faith** [1] - 10:17
**GOODRICH** [1] - 2:19
**GOOGLE** [1] - 1:13
**Google** [42] - 2:20, 3:5, 4:1, 4:4, 4:24, 5:24, 6:2, 6:5, 6:24, 7:21, 7:22, 8:12, 8:14, 8:15, 9:6, 17:18, 24:11, 29:17, 32:21, 33:8, 34:24, 35:2, 35:22, 36:13, 37:6, 37:13, 37:14, 37:20, 39:10, 39:18, 40:6, 42:12, 43:2, 45:15, 46:19, 52:9, 53:22, 54:5, 54:22, 56:8, 57:12, 57:15
**Google's** [6] - 37:9, 38:3, 42:8, 42:22, 44:7, 53:4
**grant** [1] - 55:5
**great** [4] - 3:13, 4:8, 57:25, 58:5
**Griffin** [1] - 4:5
**GRIFFING** [1] - 2:17
**guess** [1] - 38:4
**guidance** [1] - 34:17

### H

**half** [1] - 47:19
**Hall** [2] - 1:19, 3:2
**hamstrings** [1] - 54:7
**handled** [3] - 9:3, 9:16, 46:18
**happy** [4] - 5:13, 7:8, 10:15, 29:22
**hard** [1] - 25:17
**haystack** [1] - 46:22
**hear** [6] - 3:3, 7:10, 12:3, 24:4, 37:9, 52:4
**heard** [4] - 21:6, 43:24, 47:23, 59:10
**hearing** [2] - 15:12, 42:14
**helpful** [1] - 50:18
**hereby** [1] - 59:5
**hesitant** [1] - 41:22
**Hi** [1] - 28:15
**hi** [1] - 4:20
**highly** [4] - 16:17, 16:20, 18:7, 18:9

**historical** [1] - 56:15
**hold** [2] - 14:21, 50:23
**holder** [1] - 18:4
**holding** [2] - 20:16, 42:12
**holidays** [1] - 38:19
**Honor** [45] - 3:8, 3:17, 4:2, 4:20, 6:1, 7:12, 8:11, 9:13, 11:2, 12:9, 12:16, 12:24, 13:21, 14:19, 15:8, 17:4, 17:16, 18:23, 19:23, 22:8, 24:7, 24:13, 26:5, 26:18, 28:15, 28:17, 29:11, 31:18, 32:3, 33:7, 34:20, 37:7, 37:11, 39:2, 40:17, 43:1, 47:1, 47:22, 49:1, 52:2, 54:21, 54:22, 55:21, 57:10, 57:13
**Honor's** [1] - 57:23
**Honorable** [1] - 1:19
**hope** [1] - 53:9
**hopefully** [1] - 6:13
**hypothetical** [17] - 14:12, 16:6, 16:10, 16:11, 16:18, 19:5, 19:7, 19:10, 19:14, 19:18, 52:22, 52:24, 53:8, 53:14, 53:20, 53:25, 54:25

### I

**idea** [2] - 27:13, 37:25
**identified** [6] - 33:17, 34:7, 34:8, 42:15, 44:5, 49:21
**identify** [6] - 10:11, 11:15, 28:11, 33:21, 35:7, 43:14
**imagine** [1] - 25:17
**immediately** [1] - 12:6
**imposed** [1] - 52:15
**IN** [1] - 1:1, 1:2
**inadequate** [1] - 14:4
**include** [1] - 11:2
**included** [3] - 8:23, 12:25, 26:6
**includes** [1] - 50:13
**including** [2] - 24:21, 29:7
**increase** [1] - 5:21
**incur** [1] - 51:9
**indicated** [1] - 15:23
**indirect** [1] - 35:21, 36:14, 43:7
**individual** [1] - 26:9

**individuals** [1] - 29:19
**inform** [1] - 16:12
**information** [24] - 11:16, 11:20, 11:25, 13:14, 13:25, 16:17, 20:23, 21:2, 23:7, 28:21, 31:3, 34:10, 35:13, 44:17, 45:6, 45:23, 49:23, 50:14, 54:1, 54:6, 56:7, 56:13, 57:19
**infringement** [9] - 16:22, 30:8, 35:22, 36:14, 43:7, 43:9, 43:10, 52:25, 53:19
**infringer** [1] - 11:13
**infringes** [1] - 45:25
**infringing** [1] - 11:18
**initial** [1] - 10:11
**inspection** [1] - 33:24
**instead** [1] - 40:2
**insurance** [1] - 22:17
**intend** [2] - 10:22, 15:20
**intent** [1] - 45:16
**intention** [1] - 15:24
**interested** [2] - 51:7, 51:8
**interesting** [1] - 49:13
**interrogatories** [18] - 4:19, 5:4, 5:8, 5:10, 5:11, 7:6, 7:23, 7:25, 8:6, 8:13, 8:14, 8:17, 8:20, 8:22, 8:23, 9:8, 9:9, 9:22
**interrogatory** [4] - 5:25, 6:21, 8:16, 8:19
**Interrogatory** [1] - 6:15
**introduced** [2] - 19:21, 53:5
**invalidity** [2] - 16:23, 24:20
**invites** [1] - 5:19
**IP** [1] - 22:17
**ironic** [1] - 21:8
**issue** [32] - 4:23, 5:4, 5:9, 5:15, 5:25, 6:24, 10:4, 13:2, 14:24, 15:6, 15:9, 17:4, 17:5, 17:11, 22:2, 26:12, 27:19, 29:11, 30:14, 32:7, 37:23, 39:3, 39:12, 42:8, 44:24, 49:14, 54:9, 54:18, 56:1, 56:2, 57:16, 57:22
**issued** [1] - 53:3
**issues** [21] - 4:13,

10:2, 14:3, 18:11, 24:20, 26:7, 28:23, 30:1, 33:10, 33:14, 35:7, 36:18, 38:20, 39:16, 41:20, 41:21, 45:5, 45:8, 48:15, 57:10, 57:15
**item** [2] - 40:18, 57:17
**itself** [1] - 16:12

### J

**JAFFE** [8] - 2:19, 6:1, 33:7, 34:5, 37:6, 40:17, 41:15, 57:13
**Jaffe** [5] - 4:6, 6:2, 33:8, 57:14
**jam** [1] - 48:13
**Jen** [1] - 3:2
**Jennifer** [1] - 1:19
**JLH** [2] - 1:6, 1:12
**joined** [1] - 3:20
**Jordan** [4] - 4:6, 6:2, 33:8, 57:14
**JORDAN** [1] - 2:19
**Judge** [6] - 6:14, 6:19, 10:9, 22:11, 24:22, 36:3
**July** [1] - 49:6
**juncture** [1] - 43:17
**June** [5] - 28:17, 30:15, 43:25, 49:6, 49:18
**jurisdiction** [1] - 5:22
**justification** [1] - 19:3
**justifies** [1] - 43:16

### K

**keep** [5] - 9:1, 33:3, 39:18, 50:25, 51:14
**KELLY** [1] - 2:9
**Kelly** [1] - 3:17
**KIMBERLY** [1] - 2:13
**Kimberly** [1] - 3:22
**kind** [2] - 41:23, 42:2
**knowledge** [2] - 53:13, 53:18
**knows** [4] - 48:1, 48:2, 48:3, 52:25

### L

**lack** [1] - 36:13
**lag** [1] - 49:15
**large** [1] - 38:17
**largely** [2] - 20:16, 33:13

**larger** [1] - 6:21
**last** [18] - 11:14, 12:18, 17:12, 26:19, 27:24, 27:25, 35:18, 39:23, 41:17, 44:13, 45:2, 46:20, 46:21, 47:5, 47:18, 47:20, 50:8, 57:15
**late** [1] - 47:5
**LATHAM** [1] - 2:11
**Latham** [2] - 3:21, 4:21
**Laura** [1] - 3:22
**law** [6] - 7:24, 8:4, 10:24, 12:1, 23:8, 51:17
**lays** [1] - 6:14
**Layton** [2] - 3:18, 4:3
**LAYTON** [2] - 2:8, 2:16
**least** [9] - 7:6, 11:5, 12:25, 28:11, 28:13, 31:11, 31:15, 34:18, 35:3
**leave** [1] - 36:5
**left** [2] - 38:23, 57:7
**less** [2] - 29:15, 30:23
**letter** [7] - 5:3, 13:1, 14:7, 25:21, 25:24, 35:19, 43:14
**letters** [4] - 4:11, 4:17, 7:14, 42:20
**level** [1] - 49:4
**LI** [1] - 2:13
**Li** [1] - 3:22
**liability** [2] - 16:22, 18:11
**license** [1] - 11:8
**licensed** [1] - 11:5
**licenses** [7] - 11:4, 11:6, 14:13, 14:15, 20:18, 45:5, 52:11
**licensing** [7] - 11:8, 17:23, 24:19, 28:5, 29:8, 47:13, 50:14
**likelihood** [1] - 19:20
**likely** [4] - 31:11, 40:14, 56:5
**limit** [2] - 6:11, 8:16
**limitations** [1] - 15:10
**limited** [4] - 30:6, 43:11, 44:24, 51:19
**line** [7] - 3:2, 3:11, 3:20, 3:23, 4:9, 56:9, 56:17
**list** [4] - 27:17, 31:9, 32:6, 57:15
**listening** [1] - 57:5
**litigation** [14] - 15:14, 15:18, 17:13, 17:15,

17:22, 20:24, 22:2, 22:5, 22:8, 23:21, 23:24, 24:17, 25:10, 25:13
**litigations** [2] - 20:19, 30:5
**LLC** [1] - 59:22
**LLP** [1] - 2:11
**local** [1] - 26:3, 31:9
**located** [3] - 28:22, 29:9, 29:19
**log** [6] - 18:1, 21:4, 21:13, 24:2, 24:15, 25:16
**logged** [4] - 21:23, 23:23, 24:24, 25:14
**logging** [2] - 18:6, 21:18
**look** [8] - 4:10, 6:12, 14:14, 16:10, 17:2, 17:20, 46:4, 48:9
**lookback** [1] - 52:14
**looking** [4] - 14:6, 30:16, 46:20, 46:21
**lost** [11] - 10:17, 10:19, 12:8, 12:12, 13:3, 14:9, 14:23, 14:25, 15:3, 16:4, 39:4

## M

**mail** [33] - 26:14, 26:23, 30:21, 32:8, 32:12, 32:20, 32:23, 33:2, 33:9, 34:11, 34:15, 34:22, 35:2, 35:8, 35:14, 36:1, 36:12, 36:18, 36:25, 37:21, 38:1, 38:6, 38:8, 38:12, 38:20, 38:25, 42:7, 43:13, 43:16, 43:18, 44:1, 48:15, 50:21
**mails** [12] - 19:3, 27:5, 27:8, 27:15, 31:6, 31:22, 37:4, 37:23, 38:22, 40:9, 44:6, 49:10
**MOORE** [1] - 2:6
**Moore** [1] - 3:12
**man** [1] - 20:15
**manifest** [1] - 46:16
**manufactured** [1] - 6:19
**March** [2] - 5:5, 49:16
**marginally** [2] - 20:14, 31:7
**marketing** [1] - 28:3
**massive** [1] - 20:22
**material** [1] - 50:13

**materials** [3] - 16:1, 18:9, 29:9
**matter** [7] - 20:4, 27:5, 27:8, 27:9, 39:14, 39:20
**MCKOOL** [1] - 2:4
**McKool** [1] - 3:11
**mean** [3] - 30:20, 39:7, 50:23
**meaningful** [4] - 26:24, 29:2, 29:12, 29:22
**meet** [4] - 29:6, 41:5, 42:18, 50:4
**meet-and-confer** [2] - 29:6, 41:5
**meet-and-confers** [1] - 42:18
**meeting** [4] - 33:16, 41:18, 42:2, 44:19
**Megatives** [1] - 6:12
**mention** [1] - 35:18
**mentioned** [3] - 6:4, 7:4, 40:19
**merely** [1] - 15:16
**met** [2] - 34:12, 47:19
**microcomputed** [1] - 51:18
**Microsoft** [4] - 14:13, 15:18, 20:20, 49:12
**might** [7] - 17:3, 20:14, 22:23, 23:4, 26:23, 30:24, 31:7
**million** [3] - 15:14, 19:1
**mind** [2] - 37:20, 51:14
**minimum** [1] - 18:6
**minuscule** [1] - 21:2
**missing** [1] - 48:10
**modified** [1] - 52:17
**month** [1] - 49:15
**months** [8] - 5:5, 7:16, 9:11, 9:12, 9:13, 10:16, 11:14, 32:16, 38:10, 39:4, 43:3, 44:23, 45:12
**most** [3] - 28:20, 31:11, 47:22
**mostly** [1] - 41:14
**motion** [8] - 15:4, 17:17, 29:17, 36:2, 36:4, 36:10, 36:17, 36:19
**move** [4] - 15:6, 25:20, 35:19, 56:22
**moving** [1] - 50:25
**MR** [31] - 3:8, 6:1,

12:9, 12:16, 12:18, 12:24, 14:18, 18:23, 20:10, 22:7, 26:5, 26:16, 27:20, 31:18, 32:2, 33:7, 34:5, 37:6, 37:11, 39:6, 40:17, 41:15, 46:9, 46:12, 52:2, 52:6, 54:21, 55:21, 55:24, 57:9, 57:13
**MS** [14] - 3:16, 4:20, 7:12, 8:11, 9:11, 10:3, 15:8, 24:7, 24:13, 25:19, 28:15, 42:24, 44:12, 49:1
**multiple** [5] - 7:19, 8:2, 8:12, 8:13, 24:21
**must** [1] - 23:8

## N

**names** [1] - 30:18
**near** [1] - 38:17
**nearly** [4] - 9:12, 45:4, 49:8, 49:18
**necessarily** [1] - 30:20
**necessary** [2] - 35:8, 52:19
**need** [32] - 12:5, 19:18, 21:12, 21:21, 21:23, 22:2, 22:4, 23:25, 26:8, 28:12, 28:13, 31:8, 32:8, 32:19, 32:22, 33:4, 34:11, 35:14, 36:17, 38:12, 38:24, 40:2, 40:10, 41:5, 49:24, 50:3, 53:11, 55:12, 55:18, 55:20, 57:5
**needed** [1] - 26:14
**needing** [1] - 51:15
**needle** [1] - 46:21
**needs** [11] - 9:21, 21:17, 23:23, 25:14, 30:25, 31:1, 35:9, 39:1, 50:25, 51:17, 51:18
**negotiating** [1] - 53:14
**negotiation** [16] - 14:12, 16:7, 16:10, 16:11, 16:19, 19:6, 19:8, 19:10, 19:14, 19:18, 52:23, 52:24, 53:8, 53:21, 53:25, 55:1
**Netflix** [69] - 2:14, 3:4, 3:15, 3:19, 3:23, 4:18, 4:22, 4:24, 7:15, 7:21, 7:22,

8:12, 8:21, 9:12, 10:2, 10:4, 11:24, 12:25, 13:8, 13:15, 13:18, 14:15, 15:7, 19:3, 19:15, 22:15, 22:19, 23:2, 24:4, 27:2, 27:11, 27:16, 27:18, 28:10, 28:16, 29:24, 32:20, 37:24, 39:11, 39:18, 42:21, 42:22, 42:25, 43:8, 43:17, 43:18, 44:3, 44:10, 45:7, 46:3, 46:19, 47:2, 47:7, 47:15, 47:24, 48:1, 48:18, 51:21, 51:25, 52:6, 52:12, 53:22, 54:5, 54:22, 55:16, 55:25, 56:8, 57:8
**NETFLIX** [2] - 1:7, 2:3
**Netflix's** [5] - 14:3, 14:7, 45:5, 52:5, 53:4
**never** [3] - 19:25, 55:14
**NEW** [2] - 59:3, 59:17
**new** [1] - 13:10
**news** [1] - 47:12
**Nexstep** [1] - 10:10
**nexstep** [1] - 13:8
**next** [4] - 15:6, 39:12, 41:18, 51:20
**night** [4] - 27:24, 27:25, 47:5, 47:20
**non** [3] - 36:25, 47:25, 48:23
**non-custodial** [2] - 47:25, 48:23
**non-e-mail** [1] - 36:25
**noncustodial** [4] - 29:10, 30:11, 34:10, 35:13
**none** [2] - 6:9, 23:1
**noted** [2] - 7:20, 35:20
**notes** [2] - 13:21, 59:12
**nothing** [1] - 19:24
**notwithstanding** [1] - 11:13
**November** [10] - 32:14, 37:1, 37:2, 37:18, 38:3, 38:18, 40:1, 40:13, 42:13, 48:7
**Number** [1] - 59:9
**number** [13] - 3:3, 5:21, 5:25, 8:16, 11:10, 11:11, 13:9, 29:25, 30:14, 32:6,

**33:20, 33:25, 41:16
numerosity** [5] - 4:25, 5:9, 6:9, 7:3, 8:1

## O

**objection** [2] - 7:4, 22:7
**objectionable** [1] - 7:23
**objections** [6] - 6:9, 8:1, 8:5, 44:16, 45:1, 50:2
**obligation** [6] - 10:8, 11:1, 11:21, 13:13, 24:2, 24:15
**obligations** [3] - 44:19, 50:4, 50:12
**obtaining** [1] - 51:7
**obviously** [4] - 12:2, 15:21, 48:2, 50:12
**occurred** [3] - 19:8, 19:12, 19:14
**OF** [4] - 1:2, 1:16, 59:2, 59:3
**offered** [1] - 7:20
**office** [2] - 3:19, 4:4
**OFFICIALLY** [1] - 59:16
**oldest** [1] - 53:3
**once** [1] - 4:13
**one** [21] - 5:14, 7:2, 8:21, 8:22, 9:22, 11:5, 12:25, 13:9, 22:16, 22:19, 23:20, 30:8, 33:25, 35:22, 37:23, 40:6, 40:18, 56:4, 57:15, 57:17
**ones** [4] - 40:25, 42:16, 44:20, 45:19
**opening** [1] - 44:23
**operation** [1] - 20:16
**operations** [1] - 28:3
**opinion** [1] - 53:25
**opposed** [1] - 35:14
**opposing** [1] - 29:17
**opposite** [1] - 20:7
**opposition** [1] - 17:17
**order** [12] - 20:13, 23:16, 23:24, 27:11, 32:17, 36:6, 38:7, 39:22, 50:20, 51:25, 52:16, 54:15
**orders** [1] - 25:25
**organized** [1] - 42:20
**otherwise** [1] - 25:3
**ourselves** [1] - 14:2
**outcome** [1] - 27:7
**outset** [1] - 13:24

**outside** [4] - 52:1, 52:8, 53:2, 55:12
**outstanding** [3] - 34:14, 40:22, 42:15
**outweighed** [1] - 21:3
**overarching** [1] - 41:23
**overrule** [1] - 6:9
**own** [1] - 47:12

## P

**P.A** [3] - 2:2, 2:8, 2:16
**PA** [1] - 3:10
**Pacific** [5] - 11:9, 11:11, 16:7, 53:17, 54:4
**package** [1] - 11:8
**page** [2] - 14:8, 30:16
**pages** [3] - 19:2, 47:5, 59:14
**paint** [2] - 51:5, 51:11
**papers** [2] - 12:2, 13:20
**paragraph** [2] - 14:8, 14:11
**parse** [2] - 26:8, 26:13
**part** [6] - 7:2, 7:3, 17:5, 17:15, 27:18, 39:3
**particular** [2] - 23:4, 46:3
**particularly** [1] - 9:5
**parties** [15] - 9:5, 9:23, 11:19, 16:9, 16:16, 21:12, 26:20, 28:18, 30:17, 35:5, 39:24, 41:4, 42:16, 53:12, 53:18
**party** [4] - 8:3, 21:10, 22:24, 30:24
**past** [5] - 7:15, 27:16, 27:25
**patent** [8] - 11:18, 13:22, 20:18, 35:24, 36:5, 36:11, 43:4, 53:3
**patent-in-suit** [1] - 53:3
**patentee** [2] - 11:9, 11:12
**patents** [3] - 11:4, 35:23, 43:12
**patents-in-suit** [2] - 11:4, 35:23
**pending** [4] - 8:18, 8:20, 9:10, 9:23
**people** [1] - 31:13
**perhaps** [1] - 51:6

**period** [23] - 19:11, 20:3, 20:13, 21:3, 31:25, 35:3, 52:1, 52:8, 52:10, 52:21, 52:23, 53:2, 53:6, 54:3, 54:5, 56:6, 56:7, 56:11, 56:12, 56:14, 56:19, 57:16
**permitted** [1] - 36:5
**person** [1] - 31:3
**pertaining** [1] - 25:9
**pertains** [1] - 25:11
**phased** [2] - 35:4, 38:1
**phases** [1] - 35:12
**phasing** [2] - 36:16, 38:25
**phasing-in** [1] - 38:25
**phone** [1] - 50:22
**pick** [1] - 55:9
**picture** [2] - 51:6, 51:10
**piece** [1] - 17:13
**pin** [1] - 19:16
**plaintiff** [6] - 5:1, 7:13, 10:7, 13:23, 18:4, 21:25
**Plaintiff** [3] - 1:4, 1:10, 2:7
**plaintiff's** [1] - 24:2
**plaintiffs** [1] - 51:6
**plan** [1] - 36:9
**play** [2] - 11:6, 36:17
**playlist** [2] - 19:20, 53:4
**plenty** [2] - 25:12, 37:2
**point** [18] - 7:25, 19:16, 21:1, 21:7, 23:25, 27:9, 31:16, 34:3, 34:12, 36:3, 43:22, 44:1, 48:10, 52:16, 55:3, 55:5, 56:4, 57:4
**pointed** [3] - 16:3, 44:2, 54:23
**policy** [1] - 22:17
**position** [17] - 7:18, 9:6, 17:9, 17:12, 18:18, 18:22, 19:25, 20:8, 20:11, 26:11, 30:13, 32:22, 35:15, 35:16, 41:14, 52:5, 53:23
**positions** [1] - 7:21
**possess** [1] - 11:20
**possession** [7] - 11:17, 12:1, 14:1, 49:10
**possibly** [1] - 19:7
**post** [3] - 18:19, 19:4,

21:18
**post-2014** [1] - 23:14
**post-date** [1] - 21:18
**post-dating** [2] - 18:19, 19:4
**potential** [2] - 20:24, 23:3
**potentially** [1] - 53:23
**practice** [2] - 5:18, 5:20
**practicing** [1] - 16:13
**pre-2014** [1] - 17:20
**preceding** [1] - 52:10
**predates** [3] - 19:11, 52:23, 54:6
**predating** [2] - 52:21, 56:12
**predetermined** [1] - 27:7
**prepared** [1] - 36:24
**present** [2] - 43:5, 59:7
**presented** [4] - 14:24, 30:2, 37:24, 43:23
**presumed** [1] - 53:17
**previously** [2] - 11:5, 27:20
**primary** [3] - 22:7, 30:9, 45:23
**privilege** [4] - 18:3, 18:5, 21:13, 25:2
**privileged** [11] - 17:3, 17:25, 18:6, 18:21, 20:12, 20:23, 21:5, 21:22, 22:4, 24:2, 24:25
**problem** [1] - 27:2, 37:25, 41:3
**proceedings** [1] - 59:8
**process** [5] - 27:12, 27:13, 29:6, 38:1, 39:1
**produce** [21] - 15:20, 21:11, 27:4, 27:15, 28:12, 31:8, 32:22, 33:4, 40:2, 41:1, 45:16, 47:17, 48:5, 49:24, 51:25, 52:7, 52:10, 54:16, 56:10
**produced** [28] - 14:15, 15:13, 17:21, 18:25, 20:19, 21:21, 23:25, 31:22, 32:11, 33:20, 33:22, 33:23, 34:3, 34:9, 38:22, 41:14, 41:24, 42:14, 45:4, 47:9, 48:4, 48:20, 48:23, 49:7, 49:9, 49:18, 50:8
**producing** [10] -

15:24, 22:13, 30:10, 37:22, 39:9, 40:9, 45:10, 49:7, 50:3, 50:5
**product** [4] - 11:18, 16:14, 16:15
**production** [25] - 14:3, 15:10, 17:19, 17:20, 18:15, 18:16, 21:19, 22:16, 25:25, 32:14, 33:18, 34:6, 35:7, 35:13, 35:17, 36:25, 37:15, 37:17, 40:12, 44:11, 45:2, 45:3, 47:3, 47:6, 49:14
**productive** [1] - 27:10
**products** [2] - 45:9, 50:15
**profits** [10] - 10:18, 10:20, 12:8, 12:13, 13:3, 14:9, 14:23, 14:25, 15:3, 16:4
**progress** [1] - 4:14
**pronouncing** [1] - 6:13
**proper** [1] - 50:1
**properly** [1] - 24:24
**proportional** [2] - 35:9, 51:16
**proposal** [9] - 35:4, 37:9, 38:4, 40:10, 40:15, 42:8, 42:9, 42:22, 44:8
**proposed** [1] - 35:5
**proposition** [1] - 22:21
**propound** [2] - 33:11, 41:4
**propounded** [1] - 40:25
**protective** [1] - 39:22
**prove** [1] - 18:5
**provide** [3] - 9:18, 13:23, 44:15
**provided** [1] - 31:20
**providing** [1] - 44:14
**provision** [2] - 46:15, 52:17
**public** [4] - 47:6, 47:11, 47:21
**pull** [1] - 50:12
**pursue** [2] - 10:19, 30:4
**put** [4] - 3:6, 31:2, 31:8, 32:5
**putting** [4] - 9:20, 32:19, 32:23, 53:22

**Q**

**quote** [1] - 53:14

**R**

**Rachel** [6] - 3:21, 4:21, 10:3, 24:14, 28:16, 42:24
**RACHEL** [1] - 2:12
**raise** [1] - 24:6
**raised** [3] - 15:1, 15:9, 44:4
**raising** - 17:14
**rate** [1] - 14:16
**rather** [3] - 7:6, 29:24, 45:9
**re** [1] - 36:6
**read** [3] - 4:17, 28:10, 30:23
**really** [8] - 10:21, 22:4, 22:23, 39:1, 40:7, 41:6, 49:13, 49:20
**reason** [9] - 13:16, 32:25, 36:15, 40:11, 41:1, 43:15, 43:20, 44:5, 55:6
**reasonable** [6] - 10:23, 13:5, 14:10, 18:9, 54:8, 58:2
**reasons** [3] - 6:23, 9:15, 30:9
**received** [2] - 39:9, 47:2
**record** [11] - 3:6, 21:9, 25:1, 26:4, 26:7, 41:7, 44:9, 44:17, 50:17, 51:19, 51:23
**reference** [1] - 13:3
**refile** [2] - 36:5, 36:10
**reflect** [1] - 56:6
**refuse** [2] - 7:7, 16:14
**refused** [4] - 11:15, 47:17, 47:18, 52:6
**regard** [3] - 13:7, 33:9, 40:24
**regarding** [1] - 33:18
**reiterate** [1] - 50:19
**reiterated** [1] - 8:2
**reiterating** [1] - 39:18
**relate** [1] - 6:16
**related** [6] - 20:24, 22:12, 28:22, 33:13, 45:8, 45:11
**relates** [8] - 10:6, 17:8, 17:10, 29:12, 29:24, 30:7, 44:12, 46:2

**relating** [3] - 17:6, 17:22, 45:5
**relationship** [1] - 11:12
**relevance** [5] - 16:3, 22:25, 23:12, 24:22, 54:14
**relevant** [39] - 13:25, 15:21, 16:2, 16:6, 16:17, 16:21, 16:25, 18:7, 18:10, 18:21, 19:5, 19:7, 19:17, 20:1, 20:3, 20:15, 21:2, 22:6, 22:9, 22:13, 22:22, 22:24, 23:4, 25:5, 28:20, 31:6, 31:7, 31:16, 43:13, 44:6, 45:23, 49:19, 50:13, 52:22, 53:11, 54:17, 55:15, 57:20
**relies** [1] - 22:19
**rely** [1] - 10:13
**remaining** [1] - 35:10
**remind** [1] - 50:22
**reminded** [1] - 4:11
**repeat** [1] - 6:3
**repeatedly** [3] - 16:4, 29:4, 47:15
**reported** [1] - 59:7
**reporter** [1] - 4:9
**Reporter** [2] - 59:5, 59:6
**representation** [1] - 24:18
**representations** [2] - 46:2, 49:2
**represented** [2] - 15:13, 29:15
**reproduced** [1] - 49:11
**reproducing** [1] - 15:16
**reproduction** [1] - 15:16
**request** [15] - 21:19, 25:8, 25:10, 35:17, 49:17, 51:20, 51:24, 54:20, 55:4, 55:7, 56:1, 57:2, 57:3, 57:24
**request-by-request** [1] - 56:1
**requested** [4] - 27:11, 34:4, 41:12, 48:22
**requests** [25] - 23:20, 26:2, 26:9, 26:14, 32:16, 34:21, 39:5, 39:7, 39:8, 39:14, 39:16, 39:17, 40:3,

40:4, 43:16, 43:25, 44:21, 44:24, 45:11, 49:5, 49:9, 49:16, 49:25, 55:9, 55:20
**require** [3] - 13:16, 21:14, 23:6
**required** [1] - 26:2
**requires** [1] - 10:11
**reraise** [1] - 55:19
**research** [1] - 28:5
**resolve** [1] - 6:8
**resolved** [3] - 15:5, 15:19, 51:22
**resources** [1] - 9:21
**respect** [8] - 8:14, 9:5, 25:24, 32:8, 41:11, 42:7, 42:17, 45:15
**respectfully** [1] - 10:11
**respond** [5] - 5:6, 9:21, 39:8, 46:10, 54:19
**responded** [3] - 8:6, 9:4, 33:15
**response** [3] - 5:7, 7:25, 42:4
**responses** [9] - 8:17, 36:25, 41:16, 41:21, 42:1, 44:15, 45:1, 49:6, 50:2
**responsive** [15] - 5:3, 6:7, 21:19, 21:21, 21:22, 23:20, 24:16, 25:8, 25:15, 44:16, 45:17, 49:8, 49:23, 51:25, 54:11
**rest** [1] - 33:4
**restricted** [1] - 46:25
**reusing** [1] - 15:16
**revenue** [2] - 45:6, 50:14
**revenues** [1] - 56:16
**review** [4] - 39:19, 39:21, 46:14, 47:8
**reviewed** [1] - 46:1
**reviewing** [2] - 44:14, 49:25
**RFP** [5] - 33:10, 33:21, 41:16, 49:21, 54:23
**RFPs** [14] - 33:11, 33:15, 33:17, 33:19, 34:14, 34:16, 34:25, 40:20, 40:24, 41:8, 41:17, 41:25, 42:4, 44:13
**RICHARDS** [2] - 2:8, 2:16
**Richards** [2] - 3:18, 4:3
**risk** [1] - 25:3

**road** [1] - 43:3
**ROBOCAST** [3] - 1:3, 1:9, 59:9
**Robocast** [44] - 3:4, 3:5, 3:7, 3:10, 5:1, 5:19, 6:6, 7:11, 7:13, 7:14, 7:24, 9:3, 9:6, 9:16, 9:21, 10:8, 10:13, 11:15, 12:4, 12:10, 13:17, 15:13, 17:11, 18:13, 18:25, 19:23, 19:25, 20:5, 20:15, 21:10, 21:17, 23:7, 24:15, 29:2, 29:24, 31:12, 32:16, 35:25, 37:9, 37:14, 40:19, 44:4, 46:1, 53:23
**Robocast's** [13] - 10:5, 15:9, 17:13, 25:21, 25:24, 26:2, 27:1, 35:15, 43:14, 49:2, 51:20, 51:24, 57:10
**roll** [1] - 37:17
**rolling** [4] - 34:6, 36:24, 45:2, 50:6
**Ronald** [1] - 3:9
**RONALD** [1] - 2:2
**ROSATI** [1] - 2:19
**roughly** [1] - 52:8
**round** [4] - 10:16, 27:22
**royalty** [5] - 10:23, 13:5, 14:10, 14:16, 54:8
**RPFs** [1] - 26:6
**rule** [6] - 13:22, 26:3, 28:10, 31:9, 31:10, 57:1
**Rule** [6] - 10:5, 10:8, 11:21, 12:6, 12:11, 13:6
**ruling** [7] - 9:1, 23:14, 23:17, 24:4, 50:19, 56:3, 57:23
**run** [1] - 25:3

**S**

**sales** [1] - 29:7
**Samuel** [1] - 3:12
**SAMUEL** [1] - 2:6
**sat** [1] - 53:13
**schedule** [5] - 33:3, 39:21, 45:18, 47:15, 50:10
**scheduling** [1] - 32:17
**Schoenbaum** [1] - 4:5

**SCHOENBAUM** [1] - 2:17
**scope** [7] - 16:15, 16:22, 27:15, 38:6, 38:8, 38:21, 41:5
**screenshots** [1] - 47:12
**SEALED** [1] - 59:16
**search** [3] - 18:9, 21:17, 30:20
**SEC** [2] - 47:6, 47:11
**second** [2] - 10:4, 17:5, 18:17
**see** [9] - 4:15, 10:15, 30:19, 37:25, 40:1, 40:25, 41:19, 48:9, 57:18
**seek** [4] - 10:22, 11:24, 13:4, 29:7
**seeking** [6] - 12:8, 12:12, 14:25, 15:3, 22:24, 49:24
**seeks** [1] - 5:15
**seem** [1] - 4:13
**Sellix** [1] - 36:7
**sense** [4] - 34:15, 34:25, 47:1, 58:1
**separate** [1] - 7:1
**September** [2] - 9:12, 59:19
**serve** [2] - 9:7, 44:23
**served** [27] - 5:4, 5:8, 5:10, 5:12, 8:9, 8:13, 8:15, 8:16, 8:18, 8:21, 39:5, 39:7, 39:14, 39:15, 39:17, 40:4, 41:15, 44:13, 44:18, 44:22, 44:25, 45:12, 45:20, 49:5, 49:16, 49:17, 54:24
**set** [5] - 8:21, 8:23, 40:22, 49:4, 54:23
**setting** [1] - 16:4
**severely** [2] - 46:24, 54:7
**shift** [1] - 11:23
**Shomaker** [2] - 3:12, 7:13
**SHOMAKER** [4] - 2:5, 7:12, 8:11, 9:11
**short** [1] - 38:10
**Shorthand** [2] - 59:5, 59:6
**shorthand** [2] - 59:7, 59:12
**show** [2] - 17:21, 26:3
**showing** [3] - 23:11, 36:1, 52:17
**shown** [1] - 16:24
**side** [3] - 26:24, 28:14,

51:4
**sides** [2] - 30:19, 51:12
**SIGNED** [1] - 59:16
**similarly** [1] - 45:14
**simply** [2] - 6:8, 13:23
**single** [6] - 5:6, 5:7, 7:2, 43:14, 49:21, 54:19
**situated** [1] - 45:14
**situation** [6] - 33:10, 38:16, 42:12, 43:2, 51:14, 52:20
**six** [8] - 5:5, 9:11, 9:12, 9:13, 11:14, 14:9, 19:13, 52:14
**six-year** [1] - 52:14
**SMITH** [1] - 2:4
**Smith** [1] - 3:11
**sole** [1] - 17:8
**solely** [2] - 11:25, 25:14
**solve** [1] - 10:21
**sometime** [3] - 12:18, 19:22, 53:9
**SONSINI** [1] - 2:19
**Sonsini** [1] - 4:6
**sorry** [2] - 24:13, 27:24
**sort** [3] - 20:12, 38:19, 41:19
**sorted** [1] - 46:19
**sorting** [1] - 48:15
**sought** [2] - 22:16, 28:24
**sound** [1] - 42:22
**sounds** [2] - 15:11, 31:14
**source** [14] - 29:8, 33:23, 39:19, 39:21, 45:21, 45:22, 45:23, 46:5, 46:13, 46:14, 46:16, 46:17, 46:20, 48:23
**sources** [3] - 29:10, 30:11, 48:1
**speaking** [1] - 4:7
**specific** [8] - 26:6, 33:17, 33:21, 34:21, 35:16, 41:20, 41:22, 43:19
**specifically** [1] - 35:4
**specifics** [1] - 34:16
**Speedbudget** [1] - 59:22
**squarely** [1] - 11:16
**ss** [1] - 59:2
**stand** [2] - 13:4, 22:20
**standard** [1] - 31:10
**standing** [1] - 17:1

**standpoint** [1] - 27:1
**stands** [1] - 22:22
**start** [8] - 4:16, 5:20, 10:20, 38:13, 39:1, 39:8, 48:8, 48:11
**starting** [1] - 3:6
**STATE** [1] - 59:2
**statements** [2] - 26:19, 33:19
**STATES** [1] - 1:1
**status** [1] - 48:23
**Stenotype** [1] - 59:7
**step** [1] - 41:18
**still** [3] - 14:10, 32:11, 37:2
**stop** [1] - 14:5
**straight** [1] - 31:5
**strategy** [1] - 17:16
**struck** [1] - 13:10
**stuff** [1] - 33:5
**submissions** [2] - 15:11, 15:17
**submitted** [2] - 7:16, 23:2
**subpart** [1] - 6:24
**subparts** [5] - 6:10, 6:22, 7:1, 7:19, 8:24
**substantial** [8] - 32:13, 35:6, 37:17, 38:2, 38:18, 45:18, 48:12, 50:24
**substantially** [6] - 6:11, 40:12, 41:1, 41:24, 43:5, 47:17
**substantive** [3] - 5:7, 43:15
**subsumed** [2] - 6:21, 7:1
**sue** [1] - 15:3
**sufficiency** [1] - 37:14
**sufficient** [3] - 19:15, 33:22, 35:12
**sufficiently** [1] - 45:17
**suit** [4] - 11:4, 21:11, 35:23, 53:3
**summer** [2] - 4:13, 39:5
**supplemental** [2] - 41:16, 41:21
**supports** [1] - 7:18
**supposed** [1] - 12:20
**surrounding** [3] - 53:12, 53:19, 54:4
**switch** [1] - 48:18

## T

**table** [2] - 46:17, 53:14
**tailored** [1] - 30:1

**talks** [3] - 11:11, 14:9, 23:21
**TARA** [1] - 2:12
**Tara** [1] - 3:21
**technical** [5] - 27:21, 39:17, 40:19, 44:13, 47:10
**technologies** [1] - 6:17
**teed** [1] - 37:13
**teleconference** [4] - 1:20, 28:18, 30:15, 34:19
**ten** [8] - 27:17, 28:11, 28:14, 30:3, 30:18, 30:25, 31:1, 31:2
**terms** [9] - 4:22, 4:25, 9:4, 10:22, 11:7, 16:21, 16:25, 44:11, 45:21
**tethered** [1] - 35:16
**THE** [49] - 1:1, 1:2, 3:1, 3:13, 3:25, 4:8, 5:23, 7:10, 8:7, 8:25, 9:14, 12:3, 12:14, 12:17, 12:20, 14:5, 14:20, 18:12, 20:6, 21:6, 23:17, 24:9, 25:7, 25:20, 26:10, 27:17, 28:9, 30:12, 31:23, 32:5, 34:2, 36:21, 37:8, 39:3, 40:5, 41:10, 42:5, 43:21, 46:7, 46:11, 48:17, 50:16, 52:4, 54:9, 55:2, 55:23, 56:20, 57:11, 57:25
**theme** [1] - 51:4
**theories** [1] - 11:7
**theory** [1] - 13:10
**thereby** [1] - 7:23
**therefore** [3] - 8:19, 23:7, 34:10
**they've** [8] - 11:22, 17:9, 29:13, 29:20, 30:2, 34:4, 44:5, 49:9
**thinking** [1] - 34:19
**third** [2] - 9:15, 15:9
**three** [4] - 11:6, 27:21, 35:23, 45:2
**throughout** [1] - 15:11
**timely** [2] - 44:15, 44:25
**timing** [1] - 44:8
**today** [11] - 3:2, 3:24, 4:9, 4:15, 5:6, 9:1, 13:4, 20:17, 47:24, 49:20, 57:5
**tomorrow** [1] - 40:21

**ton** [1] - 58:1
**took** [2] - 8:3, 17:11
**top** [1] - 31:21
**topical** [1] - 5:14
**topics** [2] - 27:21, 27:23
**total** [1] - 28:25
**totalling** [1] - 47:4
**touched** [1] - 46:13
**transcript** [2] - 59:11, 59:13
**TRANSCRIPT** [1] - 1:16
**transfer** [2] - 17:18, 29:17
**trial** [1] - 13:12
**tried** [1] - 23:3
**true** [1] - 59:14
**truely** [1] - 8:5
**try** [2] - 20:14, 33:3
**trying** [5] - 22:1, 40:7, 51:5, 51:10, 53:24
**turn** [6] - 18:13, 20:1, 20:8, 28:9, 31:12, 51:20
**TWO** [1] - 4:2
**two** [11] - 7:3, 20:15, 28:1, 29:14, 31:13, 31:15, 31:19, 31:20, 31:24, 34:12, 45:12
**two-man** [1] - 20:15
**Tyler** [1] - 3:19
**TYLER** [1] - 2:9
**typed** [1] - 59:12
**typewritten** [1] - 59:14

## U

**U.S.M.J** [1] - 1:19
**unable** [1] - 26:17
**unclear** [1] - 30:16
**under** [6] - 6:11, 10:8, 10:24, 11:20, 14:20, 22:9, 38:3, 40:9
**undermines** [1] - 17:24
**understatement** [1] - 25:23
**understood** [5] - 26:18, 28:18, 48:17, 50:16
**undisputed** [1] - 57:22
**unduly** [2] - 17:2, 17:25, 20:11
**unfair** [1] - 22:14
**unfortunate** [1] - 49:20
**unfortunately** [1] - 5:19

**unique** [2] - 44:2, 52:20
**UNITED** [1] - 1:1
**universe** [1] - 41:9
**unlikely** [1] - 31:3
**unrelated** [1] - 39:16
**unsurprisingly** [1] - 45:8
**untenable** [1] - 17:9
**unwilling** [1] - 29:20
**up** [6] - 8:3, 16:14, 37:13, 48:7, 48:13
**update** [1] - 12:6
**updated** [2] - 12:11, 12:17

## V

**valuation** [1] - 24:20
**version** [2] - 12:15, 13:1
**versus** [3] - 3:4, 3:5, 51:3
**via** [1] - 1:19
**view** [3] - 6:7, 34:3, 46:25
**virtually** [3] - 13:18, 21:4, 38:23
**volume** [2] - 20:22, 51:22
**vs** [3] - 1:5, 1:11, 59:9

## W

**wait** [2] - 38:4, 39:25
**waive** [1] - 8:4
**waiving** [1] - 8:1
**wants** [2] - 4:18, 58:4
**warner** [1] - 59:4
**Warner** [1] - 59:21
**warranted** [1] - 43:19
**WATKINS** [1] - 2:11
**watkins** [1] - 3:21
**Watkins** [1] - 4:21
**website** [1] - 47:13
**week** [12] - 9:22, 12:18, 39:23, 40:21, 41:17, 44:14, 45:3, 46:20, 46:21, 47:19, 50:8
**weeks** [1] - 45:2
**whatsoever** [3] - 13:19, 23:11, 52:12
**wherein** [1] - 7:22
**willful** [3] - 35:21, 36:14, 43:7
**WILLIAM** [1] - 2:5
**William** [1] - 3:12

**willing** [1] - 26:25
**Wilson** [1] - 4:6
**WILSON** [1] - 2:19
**window** [6] - 15:21, 15:25, 16:19, 30:7, 43:11, 49:19
**winning** [1] - 45:9
**Wisdom** [1] - 16:9
**withdraw** [1] - 7:22
**withheld** [1] - 25:4
**withholding** [1] - 11:22
**woefully** [1] - 14:4
**word** [2] - 21:8, 37:16
**worry** [1] - 37:4
**worse** [1] - 39:11
**writing** [1] - 6:19

## Y

**year** [6] - 5:5, 17:12, 29:15, 38:5, 49:17, 52:14
**years** [3] - 19:8, 19:13, 30:3
**yesterday** [1] - 36:8
**YouTube** [12] - 4:3, 5:24, 6:3, 6:5, 6:24, 24:11, 32:21, 33:8, 34:24, 35:2, 36:13, 37:7

## Z

**zero** [1] - 49:9